WESCOTT and another vs. DELANO.

Grantee of land takes the growing grass, notwithstanding a prior sale thereof by grantor, of which he had no notice.

APPEAL from the Circuit Court for *Shawano* County.

Action by *Hiram Wescott* and *Charles D. Wescott* against *William Delano*, for taking away and converting to his own use certain marsh hay. Verdict and judgment for the plaintiffs; and the defendant appealed. The facts necessary to an understanding of the point decided by this court are sufficiently stated in the opinion.

*E. H. Ellis*, for appellant.

*W. B. Felker*, for respondent, cited 6 N. Y., 279–293; 8 Met., 34; 4 id., 580; 33 Pa. St., 251; 6 N. Y., 279; 1 Washb. on Real Property, 414–419; 3 Johns., 528; 7 Cow., 48.

COLE, J. We are of the opinion that the circuit court erred in refusing to give the first and fourth special instructions asked for by the defendant on the trial. Those instructions embraced substantially the same proposition, and were evidently drawn to meet the case in one aspect as presented by the proofs. That proposition was, that if *Hiram Wescott* conveyed

the land on which the hay was cut to George W. Delano, by deed containing no reservation of the grass growing upon the land, and so conveyed it before the grass was cut, then *Wescott* could not acquire any right to the grass or hay unless by purchase from or consent of George W. Delano, made after the delivery of that deed to him. The evidence offered on the trial tended to establish the following facts : That about the 22d of July, 1863, the defendant went to Shawano, where *Wescott* resided, and where the land upon which the hay was cut was situated, for the purpose of clearing up the back taxes on the land; that he had entered the land originally, and had bargained and sold it to his brother, George W. Delano, though he had not yet conveyed the property to him ; that at this time *Hiram Wescott* had a tax deed upon the land, and was in possession of it, cutting hay thereon, and claiming title ; that an arbitration and settlement were had between *Hiram Wescott* and the defendant, by which *Wescott* was to have the hay he had cut on the land for the two preceding years, and the hay and the grass on the land for that year, and should quit-claim his interest to the defendant, and pay him $10 ; that this arrangement was carried out, *Hiram* and wife conveying their interest in the land to George W. Delano, by quit-claim deed, in which there was no reservation of any grass growing upon the land. The same day the defendant conveyed his interest in the land to George W. Delano. A portion of the hay sued for in this action was growing upon the land at the time of these conveyances, and was afterwards cut and stacked upon the land by *Wescott*, in pursuance of this parol contract of sale. And it is claimed by his counsel that by the settlement made on the 22d day of July, 1863, he acquired a good title to all the hay then cut upon the land, upon which he had a tax title, and that, by the parol sale or license given at the time of said settlement, he had the right to cut and remove the grass then growing upon the land. On the other hand it is insisted that this parol contract

for the sale of grass then growing upon the land was void, as being within the statute of frauds.

There is certainly no little conflict among the authorities upon the point whether a parol agreement for the sale of growing trees, fruit, grass and other natural products of the earth, with the right on the part of the purchaser to enter upon the land and remove them, is or is not a contract for the sale of an interest in land, within the meaning of the statute of frauds; and it justifies the remark of Lord ABINGER in *Radwell v. Phillips*, 9 M. & W., 501, as to the uncertainty of the law upon this subject. He says: "There is a great variety of cases, in which a distinction is made between the sale of growing crops and the sale of an interest in land; and it must be admitted, taking the cases altogether, that no general rule is laid down in any one of them that is not contradicted by some other." We were referred to a number of authorities by the counsel for the respondent, which distinctly hold that a parol agreement for the sale of growing wood, timber &c., to be cut and removed by the purchaser, was not a contract for the sale of an interest in or concerning lands, within the statute of frauds. Such a contract is construed by these cases as passing merely an interest in the trees, when they are severed from the freehold, and not any interest in the land. Assuming this to be the better rule upon this subject, yet we know not upon what principle such a contract for the sale of growing grass can be held valid as against a subsequent grantee who takes the realty without notice of the agreement. Suppose the contract is held obligatory and binding upon the parties who made it, can it be sustained against a party who has no knowledge of the contract when he receives the conveyance? It appears in this case that there was no reservation in the deed of the growing grass. As a matter of course it would pass with the realty. The counsel for the respondents contends that the evidence shows that up to the time of the settlement between *Hiram Wescott* and the defendant on the 22d of July, 1863, no title had vested

in George W. Delano. *William Delano* was at this time the owner of the land, and it was with him that the parol agreement in respect to the growing grass was made. If he had continued owner of the land, and if *Hiram Wescott* had conveyed to him, then perhaps there might be some ground for saying that the contract was valid and binding; that it was an agreement or license granted for a valuable consideration, to permit *Hiram Wescott* to enter upon the land and cut the grass then growing: and that, having been acted upon, it could not be countermanded. But how can such an agreement or license affect a subsequent grantee who takes his title without notice of it? It seems to us very clear that the contract cannot be supported as to one receiving the conveyance under such circumstances. The growing grass would pass by the deed as appurtenant to the realty, and *Wescott* could only acquire a right to it by purchase from the grantee. And such was the plain language and effect of the instructions above referred to; that the deed from *Hiram Wescott* to George W. Delano transferred to said Delano all the grass which was then growing on the land, and that such grass and hay made therefrom were his own property until sold or transferred by him to some one else. Hence, if we say that a parol agreement for the sale of the grass growing upon the land, with a right to enter, cut and remove it, is not a contract for the sale of an interest in lands, we still do not get over the difficulty in this case. For here the parol contract was made with a former owner, and there is nothing to show that George W. Delano had notice of such contract when he took his conveyance. If we adopt another view of the case, that George W. Delano was really the owner of the land when the defendant made the settlement on the 22d of July alluded to, and that the defendant was acting as the agent of his brother in redeeming the lands, then it would be necessary to show further that the defendant had authority from George W. to make the contract he did. There is really no evidence from which the jury would be warranted in find-

ing that the defendant had any such authority.    But it is very apparent the respondents tried the cause upon the theory that the defendant was the owner of the land up to the time of this settlement, and that no title vested in George W. Delano until the conveyances were executed to him on the 22d of July, 1863.    This being so, the instructions were strictly applicable to the evidence tending to establish those facts.    We therefore think there must be a new trial on account of the refusal of the circuit court to give those instructions.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial awarded.