ANDREW C. MAXWELL v. BAY CITY BRIDGE COMPANY.

*Bridging navigable streams—Estoppel.*

Boards of supervisors have jurisdiction to act upon petitions for leave to bridge navigable streams only when the petitions answer the requirements of Comp. L., §§ 487–9.

A petition for leave to bridge a navigable stream must specify the proposed location of the bridge with reasonable precision; this may depend largely on the extent of the commercial interests

that may be involved in the location, and the convenience of the public; greater particularity would be needed if the bridge is to be built where there is a town than where there is not. The petition must also describe the bridge with particularity; as by indicating the location of the draws.

The statutory authority conferred upon boards of supervisors to regulate the bridging of navigable streams is a trust that must be executed by themselves; they cannot delegate it to others, especially to parties concerned in any details requiring the exercise of their judgment, such as the location or character of the bridge.

That part of a river bottom that would lie between the boundaries of a riparian owner if extended to the middle of the stream, belongs to the riparian owner.

The consent of a riparian owner to the building of a bridge on his premises amounts to a license, which is . revocable, and is revoked by conveyance of the property.

Where a licensee to use land has made costly improvements in reliance on the license, it *seems* that he should have adequate protection against its revocation.

A question not raised by the record and without any finding of facts to support it, cannot be considered in the Supreme Court.

The doctrine of estoppel rests on the making of direct or indirect assertions, promises or assurances by one party on which another has acted under such circumstances that he would be seriously prejudiced if the assertions were allowed to be disproved, or the promises or assurances withdrawn; but it should be applied only where the facts calling for it are unquestionable and the wrong to be prevented is undoubted.

The application of the doctrine of estoppel is a mixed question of law and fact, and in cases of jury trial must be submitted to the jury with proper instructions, and the conclusion from the evidence must be drawn by the jury and not by the court.

A mere statement of evidence without a finding of facts cannot enable a court to determine whether the doctrine of estoppel should or should not be applied; nor present any question to an appellate court when the trial court has not declared its opinion.

The appropriation of plaintiff's land in the bed of a stream to support the pier of a bridge is not an injury for which recovery can be had under a declaration complaining of the bridge only as a hindrance to the profitable use of plaintiff's dock and warehouse.

Error to Bay.    Submitted June 19.    Decided Oct. 8.

TRESPASS ON THE CASE.   Plaintiff brings error.

*A. C. Maxwell*, plaintiff in error, in person. The powers delegated by a board of supervisors to a bridge company for building a bridge, must be strictly construed, *East St. Louis v. St. John*, 47 Ill., 463; *Trumpler v. Bemerly*, 39 Cal., 490; *New York & Harlem R. R. Company v. Kip*, 46 N. Y., 546; *Grand Rapids Booming Company v. Jarvis*, 30 Mich., 309; a license to enter on land must be specially pleaded, *American Company v. Bradford*, 27 Cal., 360; *Vanderkarr v. Thompson*, 19 Mich., 82; and a deed from the licensor terminates the license, *Prince v. Case*, 10 Conn., 375; *Cook v. Stearns*, 11 Mass., 533; *Drake v. Wells*, 11 Allen, 141; the following nuisances are actionable: erecting a gate on a highway without special authority, *Wales v. Stetson*, 2 Mass., 143; any erection in public rivers, *People v. Vanderbilt*, 26 N. Y., 297; shutting up an old highway; *Allen v. Lyon*, 2 Root (Conn.), 213; every continuance of a nuisance makes it a fresh one, *Some v. Barwish*, Cro. Jac., 231, and gives a fresh cause of action, 3 Bl. Com., 220.

*Holmes, Collins & Stoddard* for defendant in error. The fee of the beds of navigable rivers is sometimes held to be in the States where they are situated, *Gould v. Hudson River R. R. Co.*, 6 N. Y., 522; *McManus v. Carmichael*, 3 Iowa, 57; *Haight v. City of Keokuk*, 4 Iowa, 199; *Tomlin v. Dubuque R. R. Co.*, 32 Iowa, 106: 7 Am. R., 176; *Martin v. Waddell*, 16 Pet., 367–410; *Pollard's Lessee v. Hagan*, 3 How., 212; *Goodtitle v. Kibbe*, 9 How., 474; *Smith v. Maryland*, 18 How., 74; *Mumford v. Wardwell*, 6 Wall., 436; *Weber v. Harbor Commissioners*, 18 Wall., 66; *Barney v. Keokuk*, 94 U. S., 324; *Stevens v. Paterson & Newark R. R. Co.*, 3 Am. R., 269; and sometimes in the riparian proprietors, *Lorman v. Benson*, 8 Mich., 18; *Rice v. Ruddiman*, 10 Mich., 125; *Ryan v. Brown*, 18 Mich., 196; *Chicago v. Laflin*, 49 Ill., 172; *Delaplaine v. The C. & N. W. R'y Co.*, 42 Wis., 225; but it is subject to the public easement for navigation.

and commerce, and the States may authorize the building of dams or bridges over navigable streams when deemed expedient, if they do not materially interfere with navigation, *Wilson v. Black Bird Creek Marsh Co.*, 2 Pet., 244; *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 13 How., 518: 18 How., 421, 430; *Dutton v. Strong*, 1 Black, 23; *Mississippi & Missouri R. R. Co. v. Ward*, 2 Black, 494; *Gilman v. Philadelphia*, 3 Wall, 713; *Atlee v. Packet Company*, 21 Wall, 389, 395; *Barney v. Keokuk*, 94 U. S., 324; *Pound v. Turck*, 95 U. S., 459; *Illinois River Packet Company v. Peoria Bridge Association*, 38 Ill., 467; *People v. Rensselaer & Saratoga R. R. Co.*, 15 Wend., 113; *Lansing v. Smith*, 8 Cowen, 146; *Tillotson v. Hudson River R. R. Co.*, 9 N. Y., 575; *Delaware & Hudson C. Co. v. Lawrence*, 2 Hun, 183; *Middlesex R. R. Co. v. Wakefield*, 103 Mass., 265-6; *Dugan v. Bridge Company*, 27 Pa. St., 303; *Clarke v. Birmingham &c. Bridge Co.*, 41 Pa. St., 147; *Monongahela Bridge Co. v. Kirk*, 46 Pa. St., 112; *Forsyth v. Smale*, 8 Chicago L. N., 322; *Ryan v. Brown*, 18 Mich., 207; *Wisconsin River Improvement Co. v. Lyons*, 30 Wis., 62; *Arimond v. Green Bay & Mississippi Canal Co.*, 31 Wis., 316. The State of Michigan by providing for the incorporation of bridge companies and authorizing them, on obtaining the consent of the board of supervisors, to construct bridges across navigable streams, has granted to defendant all its right to the use of the bed of so much of the river as is occupied by its bridge, Constitution of Michigan, Art. XVIII., sec. 4; Comp. L., ch. 81; §§ 487–489; *Larkin v. County of Saginaw*, 11 Mich., 88; *Grand Rapids Bridge Co. v. Prange*, 35 Mich., 400; and injuries consequent upon the exercise of a right given by the State and of a kind similar to those suffered by others in the same business, and by the public generally, will not support an action for special consequential damages, *Attorney General v. The Evart Booming Co.*, 34 Mich., 463; *Brightman v. Inhabitants of Fairhaven*, 7 Gray, 271; *Hentz v. Long Island Railroad Co.*, 13 Barb., 647; *Getty v. The*

*Hudson River R. R. Co.*, 21 Barb., 617; *Arnold et al. v. The Hudson R. R. R. Co.*, 49 Barb., 108; *Radcliff's Executors v. Mayor of Brooklyn*, 4 N. Y., 195; *Bellinger v. The N. Y. Cen. R. R.*, 23 N. Y., 48; *Boston &c. v. Old Colony R. R.*, 12 Cush., 606; *Blood v. Nashua & Lowell R. R.*, 2 Gray, 137; *Willard v. Cambridge*, 3 Allen, 574; *Blackwell v. Old Colony R. R.*, 122 Mass., 1. In this case, the soil was occupied by the bridge company, by an executed and irrevocable license, *Ameriscoggin Bridge v. Bragg*, 11 N. H., 102; *Russell v. Hubbard*, 59 Ill., 355, and the licensor's grantee is estopped from claiming compensation or damages, *Motz v. Detroit*, 18 Mich., 528.

COOLEY, J. This suit is instituted to recover damages for consequential injury suffered by plaintiff as proprietor of lots three, four and five in block thirty of Bay City, in consequence of the keeping up of a bridge by the defendant across the Saginaw river. The plaintiff's lots have a front on the river a little below Third street, and they have warehouses upon them with wharf in front, at which the large steamers and other vessels navigating the great lakes and their connecting waters have been accustomed to land and receive passengers and freight. The width of the river at this point is about a thousand feet between the wharf lines, and it has a general course to the north. The bridge of which complaint is made begins at the foot of Third street, and extends across the river at right angles to its general course to the foot of the Midland road, so called, on the west side. The east abutment of the bridge extends into the river about forty-three feet beyond the dock line, and seventy-seven feet beyond this the pier is reached, upon which rests and revolves the movable portion of the bridge or swing. This pier is forty feet wide and two hundred and ninety-four feet long, and being parallel with the shore, it extends out in front of plaintiff's lots fifty-seven feet or thereabouts. The openings for the

passage of vessels when the swing is open are about seventy-seven feet each.    The structure, as the foregoing figures will show, is considerably to the east of the middle of the river.

There are three counts in the declaration, the first of which after describing the plaintiff's lots and the warehouses and wharf thereon, and the keeping up of the bridge, alleges as the grievance that the bridge "impedes the free arrival and departure of vessels from the said wharf or dock of the plaintiff, and prevents the full enjoyment of his rights on the said river, and renders it difficult for vessels to land at or depart from said dock or wharf, by reason of which the business and profits of the said dock or wharf of the plaintiff have been greatly diminished, and by reason whereof it is very difficult and dangerous for steamboats, vessels and barges to land at or depart from the said wharf of the plaintiff." The second count complains of the pier "so far projecting out and into the said river, and beyond the channel thereof as established by law as to render the landing and departing of steamboats, vessels and barges to or from the wharf or dock of the plaintiff difficult and dangerous, whereby the business and profits of the plaintiff from his said wharf or dock have been greatly diminished." What is here meant by the channel of the river as established by law is not explained in the case. The third count avers the ownership by the plaintiff of the lots described, and "also as part thereof of the soil and ground of the bed of the Saginaw river between the river bank and the center or bed of the stream," and that "the defendant entered into and upon such other lands of the plaintiff and drove great piles into the land and soil of the plaintiff under the water of said river, and has kept and maintained the same ever since, whereby the steamboats, vessels and barges that had heretofore landed at the wharf or dock of the plaintiff on the said lots were detained and delayed and damaged, and the profits of the wharf diminished."

The erection and maintainance of the bridge was justified by the defendant under an authority supposed to have been granted by the board of supervisors of

Bay county under the provisions of the sections which constitute sections 487, 488, and 489 of the Compiled Laws of 1871, and the most important question in the case concerns the sufficiency of this authority. To determine this, the action of the supervisors must be compared with the statute from which they derive their power. The first of the three sections confers upon the board the power to permit or prohibit the construction of any dam or bridge over or across any navigable stream. The second provides that whenever any person or persons or any incorporation shall wish to construct a dam across any such stream, such person or persons or corporation shall present to the board of supervisors or file with their clerk to be presented to them at their next meeting, a petition praying for leave to construct such dam, and setting forth the purpose, location, height and description of such dam, and whether it is proposed to construct a lock or shute or apron, and of what description, for the passage of boats, vessels, rafts or timber: it then provides for public notice of a hearing on such petition, and proceeds further to declare that if the board shall allow the said dam to be constructed, the petitioners shall be at liberty to construct the same by complying fully with the terms and conditions set forth in their petition. The third of the sections provides that whenever any person or persons, township officers or corporation shall wish to construct any bridge across any stream at a point where the same is navigable for boats or vessels of fifteen tons burden or more, they shall apply to the board of supervisors by petition, and the powers and mode of proceeding shall be the same, as near as may be, as provided for the case of dams. Every such petition shall set forth the kind and description of the bridge proposed to be constructed, and whether the same is to be constructed with a draw, or whether any and what provision is to be made for the passage of vessels or boats; and the board shall have the power to grant or refuse

the prayer of such petition, upon such terms as they shall deem just and reasonable, and to prescribe what description of bridge may be constructed, or to prohibit the constructing of any bridge on the proposed location, as in their judgment the public interest shall require.

It is now to be seen whether the defendant has brought itself within the requirements of these sections. It appears that the defendant presented a petition in March, 1864, for "a license to construct and maintain a bridge across the Saginaw River at a place between Second and Ninth streets in Bay City; said bridge to be built of timber, plank and iron, and supported by piles in a good and substantial manner, with one or more draws or swings providing for the passage of vessels or boats, the openings of which to be each at least seventy-five feet; to have a double track for the passage of teams, vehicles and animals, except the openings, where there may be a double or a single track, and a walk on each of the outsides of said bridge for foot passengers."

If this petition was sufficient to answer the requirements of the statute, it conferred upon the board of supervisors jurisdiction to act upon the subject; but not otherwise. *Powers v. Irish,* 23 Mich., 429. That tribunal could only act under the law; and if the law was not complied with in the preliminary steps, its proceedings must be nullities. No question was made upon the notice of hearing, and we pass over that, and confine our attention to the petition itself.

The statute requires the petition to state the *location* of the proposed bridge. This petition proposes that it be located somewhere between Second and Ninth streets in Bay City. It was said on the argument that there are seven streets between the two named, but we are not informed what the distance is between them. It must, however, be considerable, and as the streets appear to terminate on the river where the important commercial interests of the city are likely to be most active, it is not an unreasonable inference that an important portion

of the business part of the city is and was when the bridge was petitioned for, embraced within the lines of the two streets named. There is also some evidence in the record that within these lines there was some contest for the location; it being thought likely to influence, favorably or otherwise, the business interests on or near the street which should be its eastern terminus; and it is scarcely possible that in any commercial town the location of a bridge across its navigable waters should not be a subject of solicitude to the public, and especially to all owners of water property and to all concerned in water transportation. It is evident that such was the case when the location of this bridge was under consideration.

That an important purpose was in view in requiring the proposed location to be specified cannot be questioned. The statute intends that the project contemplated shall be placed before the public by the petition and notice of hearing, so that public sentiment may have opportunity to form in respect to it, and so that parties concerned may be prepared to express their approval or disapproval to the board, with their reasons; and this, too, without being confused with many projects, every one of which would constitute an impediment to the combining and concentrating of public opinion upon the merits or demerits of any other.

It is not necessary to express in this case an opinion upon the precision necessary in specifying the contemplated location in any case differing essentially in its facts from the present. Bridges over navigable waters are sometimes needful at places where there are no towns or considerable settlements; and in such a case the interests involved would be concerned with getting over the stream, and not in making use of it in connection with commercial business at the point of crossing. Less particularity might be sufficient in such a case, because it would generally be unimportant to the interests desiring or opposing the bridge whether it should be located a

few rods further up or down.    But in the case at bar there were several different localities, each of which might be favored or opposed by different considerations, and to propose the selection of some one of these without designating which, was to propose no location at all. Had the prayer of the petition been that the board should locate the bridge wherever at Bay City the members should think proper, the specification would have been a little more general, but it would have answered the purposes of a notice and hearing nearly or quite as well.    And had the prayer of the petition been granted in general terms, the important office of deciding upon the location would have been turned over by the board to the parties concerned, and might have been decided by them on a consideration of private interest exclusively.

In other respects the petition was equally wanting in certainty.    The statute requires a description of the proposed bridge.    Passing by other particulars in which the description was as general as could well be, it is sufficient for present purposes to direct attention to the matter of the openings for the passage of vessels.    The location of these is not given or even remotely indicated, and whether there shall be one or more swings is left uncertain and undetermined.    But the number of these and the location are matters of the very highest interest to the parties having business property fronting on the river, and if these may be left indefinite, it is difficult to understand what description could be of much value. Indeed for any useful purpose the description given in this case might well have been omitted; for to inform the public that the bridge will be built of timber, plank and iron, supported by piles, is only to let them know that in respect to material it will not be anything unusual; and if the statute requires no more than this, it requires a useless formality.

The board of supervisors nevertheless entertained the petition, and assumed to grant the prayer thereof, but under certain conditions which in the main were a repe-

tition of the proposition made by defendant. The bridge was to be constructed from the foot of Third street, and was to terminate on the opposite side of the river at the foot of the Midland road; it was to be constructed of timber, plank and iron, supported by piles in a good and substantial manner, with one or more draws or swings providing for the passage of vessels and boats, the openings to be each seventy-five feet or more, with double track for the passage of teams, vehicles and animals, except over the openings where there may be a double or single track, and a walk on each of the outsides of the bridge for foot passengers. The action giving this consent was had March 24, 1864, and the board required the bridge to be completed within eighteen months from that date.

If the defects in the petition could be cured by the action of the supervisors, the resolution giving the consent would have supplied one of the most serious deficiencies; for this as respects the location made certain that which in the petition was left wholly indefinite. But the other defects of the petition are found in this resolution also. Neither the number nor the location of the swings in the bridge is determined. There might be one or several, and if only one, it might be located in the middle of the river, or near the west side, or the pier might be brought near enough to the dock line of plaintiff's property to destroy its value for commercial purposes, and still be within the terms of the permission granted. This important matter was left by the board of supervisors to be determined by the defendant for itself. Yet it seems to us unquestionable that any proper description of the bridge must have embraced the openings, and the power to decide upon these was a public trust, conferred by the State upon a public body and not entrusted to anyone else. The bridge company might have one interest in respect to it, and the general public and individuals of the general public other interests, and between them it was contemplated

in conferring the trust that the board of supervisors should decide upon the judgment of its members. It is familiar law that no such trust can be delegated by the person or body on whom it is conferred, but that very person or body and no other must execute it. *Clark v. Washington*, 12 Wheat., 54; *Thompson v. Schermerhorn*, 6 N. Y., 92; *Davis v. Read*, 65 N. Y., 566; *Supervisors v. Brush*, 77 Ill., 59; *Thomson v. Boonville*, 61 Mo., 282; *State v. Fiske*, 9 R. I., 94; *State v. Paterson*, 34 N. J., 168; *Hydes v. Joyes*, 4 Bush, 464; *Oakland v Carpentier*, 13 Cal., 540; *Whyte v. Nashville*, 2 Swan, 364. If therefore the petition to the supervisors had been sufficient to call out the exercise of such powers as the law had conferred upon them, their action must nevertheless have been ineffectual, since in one most important particular the board had refrained from bringing the judgment of its members to bear, and had left the final decision not merely to another party, but to a party whose interest in deciding it might not be identical with that of the general public of which the board was the representative.

Under this ineffectual authority the bridge company proceeded to construct the bridge, and have since maintained it. But the original illegality of the bridge does not necessarily determine the right of the plaintiff to maintain this suit. The defendant does not rely exclusively upon the authorization by the supervisors, but contends that there are reasons applying to the plaintiff's case specially which preclude a recovery on this record. One of these concerns the action of the plaintiff's immediate grantor, who was owner of the lots when the bridge was proposed and constructed.

This grantor was one Julius B. Hart, who continued to be owner of the lots until 1872 when he conveyed them to the plaintiff. It was shown in the case that two days before the action by the board of supervisors Hart united with others in the following petition:

41 MICH.—59.

"To the Honorable the Board of Supervisors of Bay County. The undersigned, residents of Bay City and owners of property and docks adjacent to Third street in this village, would most respectfully petition your honorable body to locate the proposed bridge across Saginaw River at the foot of said Third street, extending directly across the river to the street known as the Midland Road."

Mr. Hart, it is thus shown, requested the board to locate the bridge exactly where it was located. The bill of exceptions also states that "said Hart knew of the location of said bridge, and saw the same as it was constructed, and made no objection to the location of the bridge and piers as then constructed, and now maintained, and said Hart expressed himself as being pleased that the bridge was located where it was."

On the trial in the circuit court defendant contended that these facts should estop the grantee of Hart from claiming damages for the erection of a bridge which he desired and assented to, and upon which money was expended in reliance upon his assent. For some reason, however, which is not explained, the judge seems not to have been requested to submit to the jury any question on this branch of the case.

The pier to the construction of which Hart seems to have assented, was built in part on lands under the water included between the lines of Hart's lots extended to the center of the river. It was, therefore, according to the repeated decisions of this court, in part on Hart's lands. *Lorman v. Benson*, 8 Mich., 18; *Ryan v. Brown*, 18 Mich., 196; *Bay City Gas Light Co. v. Industrial Works*, 28 Mich., 182. The consent of Hart to the building of the bridge must consequently be regarded as a license by him, empowering the defendant to do acts in limitation of the occupation and enjoyment by the licensor of his realty. Such a license is in law at all times revocable, and it was revoked *ipso facto* when Hart conveyed to the plaintiff. *Drake v. Wells*, 11 Allen, 141; *Carter v. Harlan*, 6 Md., 20; *Bridges v. Purcell*, 1

Dev. & Bat., 492; *Wescott v. Delano*, 20 Wis., 514; *Mendenhall v. Klinck*, 51 N. Y., 246; *Prince v. Case*, 10 Conn., 382; *Dark v. Johnston*, 55 Penn. St., 164. But the injustice of a revocation after the licensee in reliance upon the license has made large and expensive improvements, is so serious that it seems a reproach to the law that it should fail to provide some adequate protection against it. Some courts have been disposed to enforce the license as a parol contract which has been performed on one side. *Hall v. Chaffee*, 13 Vt., 157; *Prince v. Case*, 10 Conn., 375; *Stephens v. Benson*, 19 Ind., 367; *Huff v. McCauley*, 53 Penn. St., 206; *Houston v. Laffee*, 46 N. H., 505; *Foster v. Browning*, 4 R. I., 52. In some of these cases it is also intimated that the doctrine of estoppel may be applied against the licensor when he attempts to revoke; and there are decisions to that effect. *Swartz v. Swartz*, 4 Penn. St., 353; *Cumberland R. R. Co. v. McLanahan*, 59 Penn. St., 23; *Sheffield v. Collier*, 3 Kelly, 82; *Cook v. Pridgen*, 45 Geo., 331; *Lane v. Miller*, 27 Ind., 534; *Russell v. Hubbard*, 59 Ill., 335; *Wilson v. Chalfant*, 15 Ohio, 248.

Whether these cases or any of them should be followed in this State is a question which cannot be passed upon on this record. The reasons are two-fold: *first*, that the circuit court did not pass upon it; and *second*, that the facts are not found and reported to us. Certain evidence is given from which Hart's assent to the bridge appears clearly made out, but it does not appear whether there are or are not any facts which would qualify or disprove the apparent injustice of Hart or his grantee insisting upon compensation for consequential damages. The doctrine of estoppel rests upon a party having directly or indirectly made assertions, promises or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were suffered to be disproved or the promises or assurances to be withdrawn. But as the doctrine when applied operates to take away legal rights,

it is no more than common justice to require that the facts which are supposed to call for its application shall be unquestionable, and the wrong which is to be prevented shall be undoubted. *Fredenburg v. Lyon Lake Church*, 37 Mich., 476; *Cronin v. Gore*, 38 Mich., 381. Moreover the question of its application in any case is a mixed question of law and fact, and in cases of jury trial must be submitted to the jury under proper instructions. Now however clear the facts in support of the estoppel may seem to be, it is always possible that there may be qualifying or overruling facts; and the conclusions from the evidence must be drawn by the jury, —not by the court. We have seen in *Harlow v. Marq. Hought. & Ont. R. R. Co.*, ante, 336, how one may assent to the taking or occupation of his land without being equitably precluded from demanding compensation; and it is possible that the case may be equally clear in this instance when the facts are all found. On the other hand the injustice of demanding damages may be made by the finding unquestionable; and we have occasion now to say in respect to this question only this; that a mere statement of evidence without a finding of facts cannot enable the court to determine whether the doctrine of estoppel should be applied or should not be. Still less can it present any question to an appellate court when the court reviewed has not declared its opinion.

So far as the defense rests upon the right of the State to authorize its navigable streams to be bridged notwithstanding incidental injury to individuals may result therefrom, we assent fully and unreservedly to the rule of law laid down by the circuit judge without finding in it anything that can control this case. Here the State is not shown to have authorized the bridge, and it apparently exists as a structure erected without objection, but without the proper consent. What force there may be in any subsequent acquiescence of the public or of individuals, to confer rights upon or create

exemptions in favor of the defendant, is a question which, like that of estoppel, is foreign to this record, because in no manner presented to or considered by the circuit court, nor even discussed in this court on the hearing.

Much attention was given by counsel on the argument to the position assumed by the plaintiff, that the bridge was illegal for a reason that could not be removed by any consent which could be given by the State; the reason, namely, that the pier, though constructed in navigable waters, was in part erected upon the plaintiff's land. As we have seen that the State gave no consent, we might pass by this position without notice, but as the case must go back for a new trial, it is proper to point out that in no aspect of this suit can it become material. As the plaintiff describes his injury in his declaration, it is of no importance whether he owns or the State or some third party owns the land on which the pier is located. The damages for which he seeks to recover are those caused to him as owner of the warehouses and dock, by reason of the bridge constituting an impediment to their convenient and profitable use; and this impediment is no greater and no less by reason of the ownership of the soil under the river being in him rather than another, or in the State rather than in any individual. On this subject the plaintiff was entitled to no instruction from the Circuit Judge, and the instruction actually given was immaterial, except as it assumed that the bridge was a lawful structure. And in this assumption is to be found the substantial error committed on the trial. It underlies the several rulings and renders a new trial necessary. This will be ordered, and the plaintiff will recover the costs of this court.

The other Justices concurred.