LOREN DAY, LAFAYETTE E. TAYLOR AND CHARLES BLACK-MAN v. GUY S. WALDEN.

*Easement not lost by mere neglect to enjoy but by lapse of appurtenance—Estoppel.*

An easement created by grant is not lost by neglect of enjoyment for twenty years or more, in the absence of any evidence of occupancy adverse to it.

Whether the owner of an easement who has permitted another without objection to make valuable erections which cannot be enjoyed consistent with his use of the easement, is not by his apparent acquiescence estopped from claiming the easement afterwards—Q.

An easement to take water on one tenement to be used for operating a mill on another, when created as an easement appurtenant to the mill and not to any described parcel of land, is lost when the mill goes to decay or is destroyed and not rebuilt.

Error to Kent. Submitted Apr. 14. Decided Oct. 12.

CASE. Defendants brings error. Reversed.

*J. C. FitzGerald* for plaintiff in error. A servitude may be extinguished by the act of the party who enjoys it: (*Taylor v. Hampton* 4 McCord 96; *Corning v. Gould* 16 Wend. 538; 3 Kent's Com. 449;) as by permitting the owner of the estate charged with it to so manage as to pre-

vent its enjoyment: *Farrar v. Cooper* 34 Me. 400; *Tracy v. Atherton* 36 Vt. 509; *Crossley v. Lightowler* L. R. 3 Eq. Cas. 291; and innocent purchasers take the land discharged of the easement even if the party entitled to it had only intended to suspend its use: *Moore v. Rawson* 3 B. & C. 332; the doctrine of estoppel may be applied against a licensor: *Swartz v. Swartz* 4 Penn. St. 353; *Cumberland R. R. v. McLanahan* 59 Penn. St. 25; *Sheffield v. Collier* 3 Kelley 82; *Cook v. Pridgen* 45 Ga. 331; *Lane v. Miller* 27 Ind. 534; *Russell v. Hubbard* 59 Ill. 335; *Wilson v. Chalfant* 15 Ohio 248; adverse use of land for twenty years extinguishes a surface easement: *Chandler v. Jamaica Pond Aqueduct* 125 Mass. 549; possession will be presumed adverse: *Perrin v. Garfield* 37 Vt. 310; adverse and exclusive use furnishes presumptive evidence of a grant: *Watkins v. Peck* 13 N. H. 370; *Bullen v. Runnels* 2 N. H. 257; where an ancient ditch once opened into a water course and the owner of a mill on the stream had kept the end of the ditch closed for twenty years, it was held that he could keep it closed: *Drewett v. Sheard* 7 C. & P. 465.

*Champlin & More* for defendant in error. Silence does not estop one unless it has misled another to his injury: *Railroad Co. v. Dubois* 12 Wal. 64; *Hill v. Epley* 7 Casey 334; *Taylor v. Ely* 25 Conn. 250; *Freeman v. Cooke* 2 Exch. 654; *Dyer v. Cady* 20 Conn. 564; Bigelow on Estoppel 476; *Kingman v. Graham* 51 Wis. 232; non-user does not of itself work an abandonment of an easement: Angell on Water-courses § 252; *Bannon v. Angier* 2 Allen 128; the owner's right is destroyed by the adverse enjoyment of another: *Smyles v. Hastings* 22 N. Y. 217; *Townsend v. McDonald* 2 Kern. 381; *Pillsbury v. Moore* 44 Me. 155; *Ward v. Ward* 7 Exch. 838; Washb. on Easements 551.

COOLEY, J. Walden sued the plaintiffs in error, in an action on the case for tearing down a dam, and thereby precluding his enjoyment of a water-power, the right to the use of which he claimed as an easement. The declaration

averred that at the time of the committing of the alleged grievances, the plaintiff was owner in fee-simple and lawfully possessed of a certain water-power and mill-site with the appurtenances, situate in the township of Wyoming, in the county of Kent and State of Michigan, and upon lands in like manner owned and possessed by the plaintiff, "and more particularly described as follows: Beginning at a point in or near the village of Grandville, where the north bounds of Prairie street intersects the west bounds of the canal or mill-race running across said street; thence westerly along the north bounds of said Prairie street two hundred feet; thence north two hundred feet; thence east two hundred feet to the west bounds of said canal or mill-race; thence south along the west bank of said canal or mill-race two hundred feet to the place of beginning; with the right of using so much of the water from said mill-race as may be necessary to propel four runs of stones to be used for the ordinary purposes for a grist or flouring mill; the volume of water to be used to be three cubic feet, under a pressure of eight feet head; also the use of a street of the ordinary width of streets in said village for ingress and egress to and from said conveyed premises. Also the use and enjoyment of five feet of land around said premises, for light and air. Also sufficient land for a tail-race from said premises to Buck creek, as now excavated, being the same premises and appurtenances which were conveyed to one George Ketcham, then of the city of Marshall in said State, by Thomas J. Hulbert, by deed dated the 15th day of November, 1838, and recorded in the records of Kent county on the 19th day of November, 1838, reference being had to said deed for a more minute and particular description thereof." That the water-power mentioned in said description was formed by the water from said Buck creek, which was turned into said mill-race by a dam across said creek; that the plaintiff acquired his said title January 16, 1877, at which time said dam was in existence, and raised the water in said creek so as to give a head of eight feet by means of said race upon the said lands of the plaintiff; that said

plaintiff " was the owner and in possession of the lawful right to have said dam remain as it was at the time of his said purchase, and to keep the same in perfect order for raising the water of said Buck creek to the head of eight feet;" but that the defendants disregarding his rights, on the first day of June, 1878, tore away and destroyed said dam and thereby prevented the water flowing in and along said mill-race, etc. There were other counts in the declaration in which the plaintiff claimed the water-power as appurtenant to a mill-site not particularly described by metes and bounds.

On the trial it appeared from the plaintiff's evidence that in the year 1838 Thomas J. Hulbert, mentioned in the declaration, was owner in fee-simple of the northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter of section eighteen in the township which includes the platted village of Grandville, and that in that year he erected a grist and flouring mill on said northeast quarter of the southwest quarter, near said canal or mill-race, and the same was operated by water taken from said canal or mill-race, through which the water was forced by a dam; that on November 15, 1838, Hulbert gave a deed to one George Ketcham of the land described in the declaration, supposing that the mill was upon it, and Ketcham took possession and the mill continued to be operated by means of said water-power until January, 1843, when it was destroyed by fire, and has never been rebuilt. The original deed from Hulbert to Ketcham was not put in evidence but only an abstract thereof. In the abstract the premises conveyed were described as follows: " Beg. on north line of Prairie st., on west bank canal; thence west 200 ft.; thence north 200 ft.; thence east 200 ft.; and thence south 200 ft.; and water-power." It further appeared that Hulbert was mistaken in supposing the mill to be on the land described; that, in fact, it was wholly upon other lands, and those described were nearly all upon the northwest quarter of said section. It further appeared that plaintiff had become possessed through several intermediate convey-

ances, of the rights which Hulbert conveyed to Ketcham, and the deeds, which were put in evidence, purported to convey not only the lands described with the water-power, but the "mill and building thereon situate." The plaintiff's immediate grantor was Horace Wilder, who became owner April 4, 1850, and continued to be owner until January 16, 1877, when he conveyed to the plaintiff. It further appeared that the dam which turned the water into the race was washed away in 1849, and was rebuilt by Wilder in 1850, and that Wilder at some time not named put up a building to be used for a grist-mill a short distance from where the one stood that had been burned down, but not on the land described in the declaration, and the same was never completed or used. The defendants tore away the dam in June, 1878.

On the part of the defendants it was shown that the water-power now claimed by the plaintiff had never been used since the burning of the Ketcham mill in 1843; that in 1858, the land where the dam and race are was owned by Egbert Dewey and Joseph Blake, who conveyed to defend-ants March 6, 1878; that when defendants purchased of Dewey & Blake there was a mill on the lands purchased worth more than ten thousand dollars, which was operated by water-power, obtained by means of a dam across Buck creek, higher up than the one which was torn away; that after their purchase defendants commenced to make and did make extensive and valuable permanent improvements to the mill and appurtenances, rebuilding the dam above the same, excavating a race from the dam to the mill, more than three-quarters of a mile, and changing the mill from a grist-mill to a plaster-mill, and expending in such improvements about ten thousand dollars; that the dam which was torn out was about fifty-five rods down the creek from defend-ant's mill; that for many years before their purchase the race through which plaintiff claimed a right to take water had not had any current of water passing through it, and had the appearance of an abandoned ditch, grown over with grass and weeds, and cattle and horses pasturing by it would

pass over, through and along it at pleasure, and without inconvenience; that the dam which formerly turned the water into it was rotten and dilapidated; that when defendants purchased they had no knowledge that Wilder or any other person made any claim to any right, title, or interest in the said dam or race, or to any water-power created or furnished thereby, nor did they have such knowledge until after the dam was torn away as above stated; that the dam had not for several years been any material obstruction to the free passage of the water in said creek, except in times of freshets, when drift-wood and other refuse matter would lodge there upon the rotten timbers which remained, and that never since the burning of the Ketcham mill had the dam been used for the purpose of supplying power. Also that the Dewey & Blake mill was erected in 1858, at a cost of $13,000; that the dam which was torn out if kept up to its original height would set back the water upon that mill so as seriously to interfere with its operation and impair its value, and that Wilder, while the mill was being erected and afterwards while defendants were improving and extending it, lived near it and was cognizant of the expenditures which were being made, and made no claim to a right to maintain the old dam, and said nothing to apprise Dewey & Blake, or the defendants, that a claim would be set up, which, if valid, would render their mill and the expenditures thereon of little or no value.

The defendants also gave evidence that the south twenty acres of the northwest quarter of section eighteen, being the twenty acres on which the dam which was torn out and defendants' mill were situated, was sold for the taxes delinquent for the year 1876, and a tax title obtained by Luman Jenison who subsequently conveyed to defendants. Also that the undivided five-sixths of the northeast quarter of the southwest quarter of section eighteen, which includes the site of the old Ketcham mill, was sold for the taxes delinquent for the year 1847, and the title acquired by George H. White, and that the whole of said last-mentioned parcel was sold for the taxes delinquent for 1852 and the title acquired

by said White, who subsequently conveyed to Horace Wilder. This evidence was given for the purpose of an argument that the tax sales separated the easement from the land to which it was appurtenant, and thereby extinguished the easement; but the circuit judge ruled that they had no such effect.

Upon the foregoing facts and evidence, the legal questions discussed by the parties in the circuit court and in this court were substantially the following:

1. Has the plaintiff shown any right to the easement described in his declaration? If so, then,

2. Has the easement been lost by abandonment or by adverse possession? Or,

3. Is the plaintiff estopped from now setting up the easement by the failure of Wilder to claim it when Dewey & Blake were erecting their mill and the defendants were making their improvements? And,

4. Do the tax sales affect in any way the rights of the plaintiff?

These questions will be considered in their order.

I. In order to show his right to the easement, it became necessary for the plaintiff to prove title in himself to the land to which the easement was appurtenant. The land is described in one count of the declaration; but as thus described, the evidence is very clear and conclusive that the plaintiff does not own the major part of it. The most of it was land that Hulbert never owned; and when he conveyed to Ketcham, his deed to that extent was inoperative. If therefore the easement in dispute was appurtenant to the land particularly described in this count, the action could not be maintained, because there must be another owner to a part of the land who would be a necessary party.

But there is evidence in the case from which the jury might perhaps be justified in finding that the description contained in the deed from Hulbert to Ketcham, instead of being in the abbreviated form given in the abstract which was put in evidence, was in fact identical with the descrip-

tion in a subsequent deed given by Ketcham to one Emery, which was as follows:

"All that certain piece or parcel of land situate, lying and being in the village of Grandville, bounded and described as follows, viz.: Beginning at a point in said village where the north line of Prairie street intersects the west line of the canal or mill-race running across said street; thence running westerly along the north bounds of said Prairie street two hundred feet; thence north two hundred feet; thence east two hundred feet to the west bounds of said canal or mill-race; thence south along the west bank of said canal or mill-race two hundred feet to the place of beginning; and also the mill and buildings thereon situate, and the right of using so much water from said mill-race as may be necessary to propel four runs of stones to be used for the ordinary purposes of grist and flour mill. The column of water to be used may be three cubic feet, under a pressure of eight feet head. Also the use of a street of the ordinary width of streets in said village for access to and egress from said mill; also the use and enjoyment of five feet of land around said premises for light and air, and also sufficient land for a tail-race from said mill to the creek as now excavated."

If the jury should reach that conclusion, then it would be manifest that there was an inconsistency in the particulars given in the descriptive part of the conveyance to Ketcham, and one part or the other was erroneous. The mill was not upon the two hundred feet square which was particularly described, and either that description, or that of the mill itself, must be rejected from the deed as presumably inserted in error, since it is manifest that it was not the purpose to convey both. Under such circumstances the general rule requires that that particular should be rejected, as presumably erroneous, which contains the lesser elements of certainty, and in respect to which a mistake would be least likely to occur. This rule I think would require us to reject the particular description by metes and bounds. It is true it seems very strange that the two hundred square feet

should be erroneously located when such boundaries are given as a mill-race and a street, but this is in part explained by evidence which shows that the street was not at that time opened, nor the mill-race extended so far as the land supposed to be conveyed. The village of Grandville was in fact little more than a village on paper, and an error in locating lands on the line of one of its supposed streets was not therefore very remarkable. But it would have been astonishing if Hulbert, intending only to convey two hundred feet square of unoccupied grounds, should by mistake after describing it, add the words "and also the mill and buildings thereon situate." It is almost impossible to conceive of such a mistake being committed; and the just conclusion is that it was the mill the deed was intended to convey, and not the parcel particularly described. *White v. Williams* 48 N. Y. 344. The parties themselves so interpreted the conveyance, for Hulbert gave possession to Ketcham at the time. I think, therefore, the action might be maintained on the counts which only averred the plaintiff's ownership of the mill-site, but did not particularly describe it.

II. The right to the easement was not lost by the mere neglect to assert, use and enjoy it for the period of twenty years. There is no doubt of this upon the authorities. The easement was created by grant as an appurtenance to the mill; and there were no conditions or limitations attached which rendered its use necessary to its continuance. The grant was perpetual, and without conditions; and therefore the privilege granted would continue indefinitely whether the grantee did or did not avail himself of it. An accepted grant cannot be waived or abandoned; and the neglect of the grantee to enjoy the easement would be no more significant in its bearing upon his rights than the neglect to enjoy the freehold to which the easement was appurtenant. *Arnold v. Stevens* 24 Pick. 106; *Bannon v. Angier* 2 Allen 128; *Hayford v. Spokesfield* 100 Mass. 491; *Owen v. Field* 102 Mass. 114; *Barnes v. Lloyd* 112 Mass. 224; *Taylor v. Hampton* 4 McCord 96; *Elliott v. Rhett* 5 Rich. 405; *Corning v. Gould* 16 Wend. 531; *Wiggins v. McCleary*

49 N. Y. 346; *Hall v. McCaughey* 51 Penn. St. 43; *Ward v. Ward* 7 Exch. 838; *Carr v. Foster* 3 Q. B. 581; *Crossley v. Lightowler* L. R. 3 Eq. Cas. 279; s. c. on appeal 2 Ch. App. 478; *Cook v. Mayor* L. R. 6 Eq. Cas. 177.

III.  Neither was the easement lost under the statute of limitations.  There was no evidence of any occupation of the land in hostility to the easement, or of any distinct denial of the easement until the defendants tore out the old dam There was therefore nothing that could be regarded as an enjoyment adverse to the easement prior to that time. *Cooper v. Smith* 9 S. & R. 26.

IV.  The question of estoppel which the parties raise does not seem to me entirely free of all difficulty.  The point made by the defendants is this: that Wilder, owning the mill-site and appurtenant easement, when he saw Dewey & Blake putting up a valuable mill which would be worthless if the easement was insisted upon, and afterwards when he saw defendants making costly improvements to the mill, was bound in good faith to the parties thus expending their moneys, to notify them that the easement was still claimed; and having failed to do this, he and his grantee must be held estopped from claiming the easement now.  There is very great reason in this position, provided Wilder was aware at the time of the expenditures that the enjoyment of the easement would be incompatible with the operation of the Dewey & Blake mill; which is not made so clear by the evidence as it should have been if the fact was so.  But we have held repeatedly that title to land cannot pass by estoppel: *Hayes v. Livingston* 34 Mich. 384; *Nims v. Sherman* 43 Mich. 45; *White v. Hapeman* 43 Mich. 267; *Showers v. Robinson* 43 Mich. 502; and if the rule applies to the extinguishment of easements, the point made by defendants must be considered not well taken.  In *Maxwell v. Bay City Bridge Co.* 41 Mich. 453, 467, several cases are referred to in which it has been held that the owner of lands may be estopped from revoking a parol license, where his conduct has rendered the revocation inequitable; and the effect of the estoppel would be to create an easement.  If an easement

may be created by estoppel, it may certainly be extinguished by estoppel; and in *Arnold v. Cornman* 50 Penn. St. 361, it was decided, that if one having a right of way across the land of another, stand by and, without objection, permit the owner of the land to erect a building across it, he will be estopped from objecting afterwards. No doubt the application of such a rule would accomplish substantial justice in a great many cases.

But it is important that we understand precisely what the easement is in respect to which an estoppel is claimed. The plaintiff assumes that it is an easement for water-power appurtenant to certain described lands, and that he has a right to make it available at any time, not exceeding its limitations by the grant. The mill which was upon the land when the easement was created burned down, and for thirty-four years it was not rebuilt, nor has there been evidence of an intention to rebuild. It is true that after the dam had been washed out, it was rebuilt in 1850, but it does not appear that it was with any purpose or expectation to make use of the power on the site of the old mill. There has therefore been no practical assertion of a right to the easement for thirty-four years; no enjoyment of it, and no indication of a purpose to enjoy it. The old site has remained unimproved, and the claim to the easement exists, not as a right beneficial in its use to the plaintiff, but as a barren right which the plaintiff may interpose to the profitable use of the power by others.

But it was necessary to the plaintiff's position that he should make out a right of land with the easement as an appurtenance. This he has wholly failed to do. It is conceded that the two hundred feet square particularly described in the deed to Ketcham was not conveyed at all, and plaintiff relies now upon the conveyance of the mill *eo nomine*. No doubt if he had applied in equity for a correction of the deed, he might upon a proper showing have had it corrected and the land located, but he has been content to rely upon the grant of the mill as the principal; the dominant tene-

ment to which the easement was attached; and he can claim at law nothing more.

Now without doubt a grant of a mill will carry the soil under it; and to that extent the Ketcham deed was effective. But a grant of a mill with an easement for its enjoyment is obviously a very different thing from a grant of land with an easement for its enjoyment for mill purposes. The latter may be made available at any time and by different mills in succession. But the grant of a particular mill with an easement for its enjoyment is a grant of the easement only so long as it can be used with the mill. The easement is appurtenant to the building, and when the building ceases to exist, the easement comes to an end; not by abandonment or extinguishment, but by the inherent limitation of the grant itself. We must suppose that this was the intention of the parties when in making the grant the one conveyed and the other was content to receive a conveyance of the mill only. "Such a grant, in its enjoyment, is as permanent only as the creation of which it is an incident, and necessarily as unstable. Like the natural phenomenon of the shadow cast by a substance, it vanishes when the substance disappears." It "must necessarily expire with the principal, and cease when that ceases." THOMPSON, J., in *Jessup v. Loucks* 55 Penn. St. 350, 362. It is like the grant of an easement to take water for a canal; it must cease when the canal ceases. *The National etc., Co. v. Donald* 4 H. & N. 8. The question therefore is not one of estoppel to the enjoyment of an easement, but of the existence of an easement; and the plaintiff fails because, upon his own evidence, the easement has terminated.

V. In the view taken of the case upon the last point, the tax titles become unimportant, and no expression of opinion will be made concerning their effect.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.