## SOUTHERN RY. CO. v. CITY OF MEMPHIS et al.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1899.)

### No. 708.

EASEMENTS—TERMINATION—IMPOSSIBILITY OF USE FOR PURPOSE GRANTED.

An easement granted for a particular purpose ceases when its use for such purpose is or becomes impossible under the terms of the grant; as, where an easement to lay and maintain a railroad track in a street was granted by a city on condition that the cars should be moved thereon by animal power only, and, owing to the grade of the street, it was found that no practicable use of the track could be made by the use of animal power for the purpose intended, the easement is at an end, through the limitation of the grant itself, and the city may require the track to be removed.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

The object of this bill is to enjoin the city of Memphis from removing a railroad track on Washington street, in said city, under a claim that same is an obstruction and nuisance, unlawfully maintained on a public street by the complainant. The track in question was laid down in said street in 1875 by the Memphis & Charleston Railroad Company, under whom, through purchase at a mortgage foreclosure sale, the appellant claims, and has been ever since maintained. The right to so occupy said street is claimed under an ordinance passed September 9, 1875, which, for certain valuable considerations therein named, granted to said Memphis & Charleston Railroad Company "the right and privilege to construct, maintain and operate, in the manner hereinafter provided, a single railroad track from their present depot grounds * * * through the city to the river." The principal condition touching "the manner" in which the privilege granted was to be used was in these words: "The cars of said company shall be drawn over the route by horse or other animal power at a rate of speed not greater than six miles per hour, except over that portion of the track lying west of Main street, which, at the option of the company, may be operated by locomotive steam engines." This controversy involves only that part of the street easement granted by this ordinance which lies on Washington, east of Main street; being that part of the route between the depot and the river on which the road was to be operated by animal power

only. This ordinance was granted upon several valuable considerations,—among them being that the railroad company would pave and keep paved Washington street, and would promote the construction of an elevator on the river front, and subscribe not less than $15,000 to the capital stock thereof. These provisions of the contract have been complied with, so far as they were conditions, and the track was at once constructed, and has been maintained, though possibly not in the precise state and condition required by the ordinance,—a question which we find no occasion to decide. September 6, 1894, the city council of Memphis passed a resolution reciting that this Washington street track was "a useless and unnecessary obstruction on that street," and making it the duty of the mayor to notify said company to remove same within 30 days. At the date of this resolution the Memphis & Charleston Railroad was being operated by Charles M. McGhee and Henry Fink, as receivers, appointed by the United States circuit court for the Western district of Tennessee, under a creditors' bill pending in that court, entitled, "Samuel Thomas v. Memphis & Charleston Railroad Company." The receivers aforesaid at once filed a petition in the cause of Thomas v. Memphis & Charleston Railroad Company, making the city of Memphis a party defendant thereto; setting up the contract under which said track had been laid down on Washington street, and that the city, through its police force, was about to remove its track from said street, in violation of the contract under which it had been placed there; and praying an injunction upon the ground of irreparable injury and an inadequate legal remedy. A restraining order was made. The city thereupon filed its answer, setting up the extinguishment or abandonment of the easement granted by the ordinance of 1875, as well as that same had been forfeited by failure to keep the street and track in such repair as required by the terms of the grant. Much evidence was taken, but the cause was not brought on for a hearing, either upon the motion for an interlocutory injunction or on the merits, until December 30, 1898. In the meantime the Farmers' Loan & Trust Company, as trustee, filed its bill in the same court for the foreclosure of a mortgage made by the said Memphis & Charleston Railroad Company, covering its entire railroad, and including said Washington street track and easement. McGhee and Fink were appointed receivers under this bill, also, but the causes were not consolidated with the bill of Samuel Thomas against the same corporation. In February, 1898, said Memphis & Charleston Railroad, including the track in question, was sold to satisfy said mortgage, and bought by the Southern Railway Company, the appellant here. The sale was confirmed, purchase money distributed, and an order made in both cases discharging the receivers, December 27, 1898. On December 30, 1898, the court dismissed the pending petition of the receivers against the city of Memphis, upon the ground that their relation to the property in question had ceased by reason of their discharge as receivers. An application by the purchaser of said railroad to be substituted as a party in the room and stead of the receivers, with leave to prosecute said suit, was denied. The decree dismissing said petition was without prejudice to the merits, or to the right of the Southern Railway Company, as purchaser of the property, to file an independent suit to protect its rights as such. Thereupon this bill was filed by the Southern Railway Company, and by stipulation the evidence taken under the petition of the receivers is taken as evidence in this cause. Upon a final hearing the circuit court denied an injunction and dismissed the bill.

Frank P. Poston and Josiah Patterson, for appellant.

John H. Watkins, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge (after stating the facts as above). The grant of the right here involved was "to construct, maintain and operate, in the manner hereinafter provided," a single-track railway from the then depot grounds of the Memphis & Charleston Railroad Company through the city to the river, by a specified route. The

principal provision in reference to the manner in which the privilege conferred should be used was that cars east of Main street should be drawn "by horse or other animal power." The reasons for this conditional easement are not vital to the validity of the prescribed mode of operation, but are found in the fact that Washington street, east of Main, was devoted to private residences, and any other mode of use was therefore objectionable, as greatly increasing the burden of the easement upon the street and abutting owners. After laying down the track, and otherwise complying with the conditions of the grant, the railroad company found that, owing to the grade of Washington street, the track thereon could not be operated with horse or other animal power, as required by the ordinance. When this was discovered the company applied for and obtained, by resolution of the city council passed January 7, 1876, the privilege of operating said track until July 1, 1881, by means of a dummy engine. Upon expiration of that license the company continued to use steam power by sufferance until January 2, 1890, when another agreement was entered into, whereby the city consented to the use of steam power until November 2, 1893; the railroad company agreeing that it would not "claim the right to use such steam power after that date, except in so far as it is expressly permitted by said original contract of September 9, 1875." After the expiration of the license thus extended, the company desisted from the use of steam power, and the track has not been since used for traffic purposes at all. To preserve as far as possible any right which the company might have to maintain and operate said track, the company, since November, 1893, has been in the habit of daily sending a hand car or railroad velocipede over the track, the motive power being man power. The superintendent, Mr. R. B. Pegram, very frankly testifies that the franchise, restricted to animal power, is valueless, and that the track is maintained solely with the hope that the city may at some time consent to the use of some other power. The facts make a case where an easement to maintain and operate a railroad on a public street has been granted subject to such conditions as to mode of operation as to render any lawful operation impossible. If, under such circumstances, the right to continue the maintenance of the track upon the street exists, it is a barren right to maintain an obstruction in the public street which is of no possible beneficial use to the grantee, and which is only maintained in the hope that the terms upon which the easement was originally granted may in some future time be so modified as to make its operation practicable. This franchise was granted in 1876. This bill was filed in 1898. For 22 years this franchise has never been available, and it is now admitted that it is unavailable in the terms granted. The use of the track by means of steam power is of no avail in preserving the franchise under the original contract, for that use was by special license, which has expired, and is therefore of no advantage whatever in avoiding the termination of the rights granted. The right to maintain a track upon Washington street is only accessory to the right of operating it, and, if the right to operate has ceased, the right to maintain the track is lost. That which is only accessory cannot subsist when the principal right is lost. Washb

Easem. (4th Ed.) pp. 699–702; Jessup v. Loucks, 55 Pa. St. 350, 362; Manure Co. v. Donald, 4 Hurl. & N. 8; Day v. Walden, 46 Mich. 575, 10 N. W. 26; Hahn v. Lodge No. 47, 21 Or. 30–34, 27 Pac. 166; Jones v. Tapling, 11 C. B. (N. S.) 283; Mussey v. Proprietors, 41 Me. 34; Central Wharf & Wet-Dock Corp. v. Proprietors of India Wharf, 123 Mass. 567–570; Willard v. Calhoun, 70 Iowa, 650, 28 N. W. 22; Town of Freedom v. Norris, 128 Ind. 377, 27 N. E. 869.

This grant was by the public of an easement in a public street, to a quasi public corporation, and for public purposes. It was intended that the track should be operated as a public facility, and upon this ground only was it admissible at all. The fact that the track has not, in 22 years of experiment, been used in the only way admissible under the grant, and the conceded fact that it cannot be made available in the only way allowable, operate to terminate the easement. Without regard to any question of abandonment by nonuser, the impossibility of enjoying the easement granted operates to bring it to an end through the inherent limitation of the grant itself. It is like an easement granted for a particular purpose. If that purpose cease to exist, or its enjoyment become impossible, the grant is at an end. Thus, where there was a reservation of a right of way over flats appurtenant to uplands, for water craft, to and from a dock or wharf, the easement was held to be extinguished by the subsequent construction by the city of a public street between the plaintiff's upland and the dock, which made access to the dock and deep water impossible. Mussey v. Proprietors, 41 Me. 34. In Manure Co. v. Donald, 4 Hurl. & N. 8, an easement to take water for the use of a canal was held to cease when the canal was converted into a railroad. Pollock, C. B., in that case stated the principle thus:

"If an easement for a particular purpose is granted, when that purpose no longer exists there is an end of the easement."

In Central Wharf & Wet-Dock Corp. v. Proprietors of India Wharf, 123 Mass. 567–570, Gray, C. J., for the court, said:

"The only easement which the plaintiff acquired * * * was made to depend upon an open dock and common passageway for ships and other water-borne crafts. All the covenants, including those against erecting fixtures or buildings of any kind within the bounds of the dock, were incidental to the grant of this easement. The laying out of a street and filling up of the dock by the city under authority conferred by statute made the enjoyment of this easement impossible, and thereby extinguished it."

In Washb. Easem. (4th Ed.) p. 102, the principle is thus stated:

"But where a way, for instance, is created in favor of an estate for one purpose, or in reference to a particular use to be made of such estate, it ceases to be appurtenant, if the estate is essentially changed in its mode of occupation. Thus, where a way belonged to an open parcel of land for the use of it as an open parcel, and the owner of the same erected a cottage thereon, covering the entire space, it was held that by such change in the premises the right of way was extinguished."

The same author, at page 702, states the principle as defined by Toullier (3 Toullier, Droit Civil Français, 522), as follows:

"Servitudes cease when the subjects of them happen to be in that condition that they cannot be used. As, if the dominant and servient estates go to ruin, or they are submerged, or the house which owes the servitude and that

to which it is due are burned or demolished. It would be the same if the cause of the servitude should cease,—as, for example, if a spring where I have a right to draw water becomes dry, I should not only lose the right of drawing water; I should lose the right of passing over the neighboring tenement, because the right of passage was only accessory to the right of drawing water, and that which is accessory cannot subsist when the principal right is lost."

It matters little, in principle, whether the easement as originally granted was incapable of enjoyment for the purposes intended, or whether by change in conditions its exercise became impossible. The track, as a mere accessory to the principal right, is incapable of enjoyment, is an obstruction to the public street, and equity will not interfere to prevent its removal. The decree denying the injunction and dismissing the bill is accordingly affirmed.