Hicks, Appellant, vs. Smith and another, Respondents.

*May 20 — June 21, 1890.*

*Sale of timber to be cut and removed within a certain time.*

The pine timber upon certain lands was conveyed to the plaintiff, with a stipulation that it should be cut and removed from the lands before a specified date. Afterwards, with knowledge of the plaintiff's rights, the defendants purchased the land. *Held,* that all timber cut down and severed from the soil by the plaintiff before the date specified became his personal property, which he might remove within a reasonable time after said date.

APPEAL from the Circuit Court for *Langlade* County.

Replevin for a quantity of pine logs which had been cut and removed from certain lands in township 35 north, range 12 east. The facts are stated in the opinion. The plaintiff appeals from a judgment in favor of the defendants.

For the appellant there was a brief by *Webster & Wheeler,* and oral argument by *W. H. Webster.*

For the respondents there was a brief by *Lynch & Latta,* and oral argument by *G. W. Latta.* To the point that under the contract of sale to him the plaintiff was entitled only to so much of the timber as he should cut *and remove* within the specified time, they cited *Rich v. Zeilsdorff,* 22 Wis. 544; *Strasson v. Montgomery,* 32 id. 52; *Martin v. Gilson,* 37 id. 360; *Golden v. Glock,* 57 id. 118.

Orton, J. The facts are substantially as follows: On and prior to August 31, 1886, Fox & Weston were the owners of the land, and sold all the pine timber thereon to the plaintiff by the following instrument in writing, viz.: " [We], for and in consideration of the sum of one hundred dollars to us in hand paid, the receipt whereof is hereby acknowledged, do grant, bargain, and sell to *Asa Hicks,* of

Shawano, all the pine timber on the northwest quarter of the northwest quarter, and the northeast quarter of the northwest quarter, of section 30, town 35, range 12 east; the said pine timber to be cut and removed from the above-described forties on or before January 1st, 1888. Witness our hands and seals (by W. J. Abrams, our attorney in fact) this 31st day of August, 1886. [Signed] A. J. Fox. ' [Seal.] A. WESTON. [Seal.] By W. J. ABRAMS. [Seal.]" On the 25th day of November, 1887, the said Fox & Weston contracted to sell the land on which such pine timber was then standing to the defendant *C. H. Larzelere*. After that, and before the 1st day of January, 1888, the said plaintiff cut down and severed from the soil all or a large part of the pine trees or timber on said land. Some of them were sawed into logs, and the rest were marked off into log-lengths, and the log-mark of the plaintiff was placed on each log and log-length, but none of the same were removed from said land on or before said 1st day of January, 1888. After that date the defendants sawed the trees which had been so cut down and marked into log-lengths by the plaintiff, and removed all of them from said land, and converted the same to their own use. It was agreed on the trial that said logs so removed by the defendants were 165,432 feet.

The action is in replevin, and was tried by the court, a jury having been waived, and the court found the above facts, as also that on the 9th day of May, 1888, the said Fox & Weston gave to the plaintiff a bill of sale of said pine timber theretofore cut or removed from said land, and assigned to him all their interest in the same and their rights of action therefor, and that when the said *Larzelere* contracted to purchase said land as aforesaid he had been informed of the fact that the plaintiff had previously purchased the pine timber on said land from said Fox & Weston, and that he then claimed to own the same under such purchase. The court also found that the value of said pine timber so

removed by the defendants was $11 per 1,000 feet, and the total value thereof was $1,819.75, and rendered judgment therefor in favor of the defendants.

The finding of the defendant's knowledge of the plaintiff's right to the timber before he purchased the land was amply sustained by the evidence. It seems that the value of the land consisted almost entirely of the pine timber on it, and when the defendant contracted to purchase it he evidently supposed that the plaintiff would be unable to remove said timber so cut and marked by him before said January 1, 1888, the day of forfeiture, then near at hand, and that he would probably obtain both the timber so cut and the benefit of the plaintiff's labor in cutting it. Whatever, therefore, the defendants' right may be at law, they have very little in equity.

There are only two material questions in this case, and they are both disposed of in the recent case of *Golden v. Glock*, 57 Wis. 118. The cases appear to be materially alike in principle and fact. In that case the deed was for all the timber on a certain quarter section of land, except the white oak, and there was a separate clause or stipulation in the instrument that the timber on the south half of the premises should be removed within one year, and the balance within two years. The timber was cut down and into stave bolts within the time limited, but none of it removed from the land. The purchaser of the land from the grantor claimed the stave bolts. The questions in both cases were — *first*, whether such stipulation is a condition or a covenant; and, *second*, whether the timber, having been severed from the soil and converted into personal property within the time limited, does not belong to the grantee in the deed. It was decided in that case that the stipulation was a condition of the grant, and that the legal effect of the instrument was to convey all of the trees and timber designated which should be removed within the

time prescribed. So here it was clearly the intention of the parties that this stipulation should have the effect of such a condition. As to the second question, it was decided that the trees from which the bolts were manufactured, having thus been severed from the soil prior to the expiration of the time limited, and their character essentially changed by such manufacture, so that the product became personal property, they were in effect thereby removed from the premises within the meaning of the conditions in the deed, and hence that the plaintiff, even after the expiration of the two years, had an implied right or license to go upon the premises and take therefrom the stave bolts so manufactured.

The learned counsel of the respondents contend that the above case has no application to the last-above question, because in that case the trees were not only cut down but manufactured into stave bolts, while here they were only cut down and marked, or cut into logs, and not manufactured into anything, but lay where they fell. It is not made essential in that case that the trees should have been manufactured into anything after they were severed from the soil to make them personal property. It is a statement of the facts in that case merely, and the severance of the trees from the soil, by cutting them down, constitutes their conversion into personal property. They are no longer a part of the land, and are not real property, and therefore must be personal property. Manufacturing the timber, after it is cut down, into any form is no part of the act of its *severance* from the land. It is personal property because it is "severed from the soil." The sap can no longer go up into the tree from the soil, as some writers say.

Trees and grass growing upon land are alike a part of the land itself, and when cut down or severed from the land are alike personal property. *Wescott v. Delano*, 20 Wis. 514. Must grass not only be cut and severed from

the land, but be manufactured into something else, to make it personal property? No more need the severed timber to be manufactured into some other form to make it such. Bigelow, C. J., says in *Drake v. Wells*, 11 Allen, 141 : "In these cases it appeared that the license had been acted on by the vendee, who had entered on the land and cut the timber which was the subject of the contract of sale, and had thereby acquired a title to the wood as personal property." That is precisely this case, only the severed trees here had passed into the similitude of logs, which, however, can make no real difference either way. In *Owens v. Lewis*, 46 Ind. 488, 15 Am. Rep. 295, it is held that if a person had license to sever the trees from the soil, after they are severed they become his personal property, and that trees in such respect are the same as grass and other natural productions of the soil. In *Bank v. Crary*, 1 Barb. 542, it is held that growing trees, fruit, and grass, being parcel of the land, are within the statute of frauds, and until *severed* from the land, either actually or in contemplation of law, they cannot be conveyed by parol, but when severed from the soil they become chattels. The decisions are uniform that when growing trees are severed from the soil under a license they become personal property and belong to the licensee. Note to *Kingsley v. Holbrook*, 45 N. H. 313, 86 Am. Dec. 173. A tree is real property so long as it stands in its native soil; but when it is cut down it becomes subject to the laws of personal property. 1 Schouler, Pers. Prop. 4. Standing trees are a part of the realty, and can only pass by deed, but when severed may pass like any other chattels. 2 Schouler, Pers. Prop. 451. But the proposition would seem to be self-evident.

There is no real difference between this case and that of *Golden v. Glock*, 57 Wis. 118. It follows, therefore, that all the trees the plaintiff cut down and severed from the soil before the time limited in said deed became his personal

property, which he had the right to remove within a reasonable time, even after the time fixed in the deed had expired. If anything more was required than a mere severance of the trees from the soil to make them the personal property of the plaintiff, he had indicated his intention of converting all of them into logs, by marking them into the proper length, and sawing many of them into logs, and placing his mark upon all of them, ready for removal as personal property. But I am unable to see how the *use* of them, after they are severed from the soil, could make the severance more complete, or make them personal property. The plaintiff had bought and paid for them, and cut them down when he had the right to do so, and treated them as his *movable* property. The deed of Fox & Weston to the defendant *Larzelere* in execution of the contract for the purchase of the land was not made until long after the commencement of the suit. At that time it could not have passed the title of those logs if they had remained on the ground as the plaintiff left them, and the contract with notice of the plaintiff's rights were subject to them. The defendants, therefore, never acquired any title to the property as against the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render the proper judgment in favor of the plaintiff.