BURNHAM v. KELLEY.

1. APPEAL AND ERROR—FINDINGS OF TRIAL COURT—RECORD—FALSE
   FINAL ACCOUNTS IN PROBATE COURT.
   Finding of trial court in suit to set aside final accounts by
   executor of estates of father and mother of plaintiff that
   executor had knowingly filed false or inaccurate accounts *held,*
   amply supported by record.

2. JUDGMENT—RES JUDICATA—EXECUTORS AND ADMINISTRATORS—
   ALLOWANCE OF FINAL ACCOUNT.
   Allowance of annual or final account of executor or adminis-
   trator is conclusive as to all matters which are before court
   and are adjudicated therein, but is not final or conclusive and
   does not constitute adjudication in matters which were not
   before court on accounting, and which were not considered or
   passed upon in allowing said account.

3. SAME—PROBATE COURTS—RES JUDICATA.
   The general principle of *res judicata* applies to the orders of
   the probate court on final accounts of executors and admin-
   istrators.

4. SAME—COLLATERAL ATTACK.
   The orders of the probate court are judgments, *res judicata* of
   the matter involved, and cannot be attacked collaterally.

5. SAME—ACCOUNTS.
   The allowance of an account in probate court is an adjudication
   of each item in it.

6. SAME—EVIDENCE.
   Except on appeal from findings and orders made by the probate
   court, no other court may inquire into the sufficiency of the
   testimony to determine whether it sustains them nor whether
   they were supported by any evidence.

7. EXECUTORS AND ADMINISTRATORS—FINAL ACCOUNTS—FRAUD—
   EQUITY.
   The only procedure by which a court of equity may inquire into
   final accounts of executors or administrators filed in a probate
   court is on bill to set aside orders allowing them because of
   fraud.

8. JUDGMENT—RES JUDICATA—ALLOWANCE OF FIDUCIARIES' AC-
COUNT IN PROBATE COURT—FRAUD—NOTICE.

The probate court's allowance of an account by a fiduciary is
not *res judicata* where there is fraud, breach of trust, conceal-
ment of assets, or failure to give proper notice of the hearing
on the account.

9. SAME—RES JUDICATA—FINAL ACCOUNTS IN PROBATE COURT—
FRAUD—ACCOUNTING BY EXECUTOR.

The filing of "false, fictitious, fabricated and incorrect ac-
counts" in the probate court by executor of the estates of
plaintiff's father and mother constituted a fraud upon the
court and the court's orders allowing such accounts are not
*res judicata* of the accounts filed nor a bar to the prosecution
of equity suit to set aside such orders and for an accounting
by the executor.

10. APPEAL AND ERROR—EXECUTOR'S FINAL ACCOUNTS—FRAUD—
CREDIBILITY—CORROBORATION.

On appeal in suit to set aside probate court orders allowing final
accounts of executor of estates of plaintiff's father and mother
because executor had made false statements under oath, not
much weight is given to executor's testimony that is unsup-
ported by the testimony of impartial witnesses.

11. EXECUTORS AND ADMINISTRATORS—SALE OF REALTY—LICENSES.

An executor has no authority to sell real estate without a license
from the probate court.

12. WOODS AND FORESTS—STANDING TIMBER—SEVERANCE.

Standing timber is real estate but when severed it becomes per-
sonal property.

13. EXECUTORS AND ADMINISTRATORS—SALE OF PERSONALTY—LIA-
BILITY FOR LOSS.

An executor is liable for the loss resulting from an unlawful sale
of personal property.

14. ESTOPPEL—DISADVANTAGE TO ONE RAISING DEFENSE.

A fundamental requisite of estoppel is that conduct, whether
action or inaction, on the part of the one against whom the
estoppel is asserted has worked to the disadvantage of the
party who urges this defense.

15. EXECUTORS AND ADMINISTRATORS—UNLAWFUL SALE OF STANDING
TIMBER—DELAY IN SEEKING RECOVERY—ESTOPPEL.

Since delay in seeking to recover loss from unlawful sale by
executor of standing timber on land inherited by plaintiff from

his father and mother did not prejudice executor and surety, plaintiff would not be estopped from recovering such loss.

16. SAME—UNLAWFUL SALE OF STANDING TIMBER—WEIGHT OF EVIDENCE.

In suit to recover from executor of the estates of plaintiff's father and mother for loss to plaintiff resulting from executor's unlawful sale of standing timber, weight of evidence *held*, to support plaintiff's claim that he sustained a loss for which he should recover.

17. APPEAL AND ERROR—REMAND—ADDITIONAL PROOFS.

Upon reversal of portion of trial court's decree in which no recovery had been allowed in suit against executor for loss sustained by plaintiff because of the unlawful sale of standing timber, trial court is permitted to take further proofs to determine the actual loss suffered by plaintiff.

18. EXECUTORS AND ADMINISTRATORS—ACCOUNTS RECEIVABLE—BURDEN OF PROOF.

No recovery is allowed plaintiff in suit against executor for accounting for alleged loss sustained through failure of executor to collect accounts receivable of estate of hardware merchant where plaintiff, testator's son, has failed to show the particular accounts not collected.

19. SAME—COLLECTION OF RENTALS—BURDEN OF PROOF—EVIDENCE.

No recovery is allowed plaintiff, son of testator, in suit against executor for accounting for alleged neglect in the collection of rentals during a period of general financial distress where plaintiff failed to show misappropriation of rentals collected or failure to collect rents that should have been collected.

20. SAME—FUNERAL EXPENSES.

No recovery is allowed plaintiff, son of testator, in his suit against executor for accounting for half of funeral expenses where bank records of executor show he paid a certain sum in full settlement of the account and there is no proof that plaintiff's sister had paid the executor any money on such account.

21. SAME—THEORY OF COMPENSATION FOR SERVICES.

Compensation for the services of an executor of an estate is based on the theory that a service well performed should be paid for.

22. SAME—COMPENSATION—FORFEITURE  FOR  MANIPULATION  OF ESTATE.

Manipulation of the affairs of the estates of plaintiff's father and mother to such an extent as to make it impossible to

determine the loss to the estate forfeits a bank cashier's right to compensation for services as executor of father's estate where he had served as personal representative for a number of estates and was familiar with probate accounts.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted June 5, 1941. (Docket No. 17, Calendar No. 41,500.) Decided October 6, 1941.

Bill by Howard Burnham against David L. Kelley and Aetna Casualty & Surety Company, a Connecticut corporation, surety, to set aside two orders allowing final accounts filed in the probate court and for an accounting and other relief. Bill dismissed. Plaintiff appeals. Reversed and remanded for determination of damages.

*Alexis J. Rogoski,* for plaintiff.

*Harry D. Reber,* for defendant David L. Kelley.

*Travis, Merrick & Johnson,* for defendant Aetna Casualty & Surety Company.

SHARPE, C. J. This is a chancery suit to set aside two final accounts filed in the probate court of Newaygo county and for an accounting of the executor of the estate of Asle E. Burnham, deceased.

Asle E. Burnham, a resident of Newaygo, Michigan, died December 29, 1930. His heirs at law were his widow, Alice R. Burnham; his son, Howard; and a daughter, Edna Bletcher. His will was admitted to probate, and defendant David L. Kelley qualified and was appointed executor February 16, 1931, with defendant Aetna Casualty & Surety Company as surety on the bond. The will left the estate to the widow and son. The executor filed the following inventory of the estate: stock of hardware, $5,400;

fixtures, $700; accounts, $1,500; 80 acres of land in Everett township, $300.

At the time of his death, Asle E. Burnham was the owner of other real estate consisting of his residence, a store building, a garage, and a cottage at Oakland Beach. A mortgage was outstanding against the store building in the principal sum of $2,940, interest due and unpaid of $1,093, and delinquent taxes of $1,355.69. Claims were allowed against the estate in the amount of $5,287.96 and funeral expenses of $500. After the death of Asle E. Burnham, it was decided that the hardware business of the deceased be turned over to Howard Burnham to manage and operate as a going concern. On December 10, 1931, Alice R. Burnham died intestate, leaving as her sole heirs the son and daughter above mentioned. Defendant Kelley was appointed administrator of her estate. On May 31, 1932, the son and daughter executed an agreement in writing whereby they agreed upon a division of all of the assets of the estates of their father and mother without regard to the will of Asle E. Burnham. In accordance with this agreement, the administrator turned over to Edna Bletcher two parcels of real estate, household goods and an automobile.

On August 13, 1935, Kelley filed an account in the estate of Asle E. Burnham showing payment of the claims against the estate of $5,887.96. On September 4, 1935, plaintiff, Howard Burnham, and his sister filed a waiver of notice of hearing and consent to the allowance of the account; and on September 30, 1935, an order was entered allowing the account.

On June 22, 1937, Kelley filed his final account in the Asle E. Burnham estate, showing a residue in the estate consisting of the store building, the garage and the woodlot. On the same day, a waiver of

notice of hearing and consent to allowance of the final account was signed by plaintiff and his sister and filed in the probate court. On the same day an order was entered allowing the account. After the allowance of the final account and Kelley's discharge as executor, the books and records kept by him pertaining to the estate, with the exception of his bank records, were destroyed. At the time defendant Kelley was appointed executor of the estate of Asle E. Burnham, there was valuable standing timber on the 80 acres of land. In 1932, Kelley determined to market the timber. He did not obtain a license to sell the timber, nor was any appraisal of its value made and filed in the probate court. The timber was cut and sold, as well as the pulp wood and stove wood.

Plaintiff claims that the executor sold from the woodlot timber and wood having an aggregate value at the date of sale of $2,642.50; that the executor was able to show that only the sum of $1,651.34 was obtained from the sale of the wood; that the woodlot was lost to the estate by failure of the executor to pay taxes; that the property was sold May 3, 1932, for the 1929 taxes and again in 1938 for the taxes from the years 1931 to 1935 inclusive; that there was a loss of rentals in the sum of $2,652.45 by reason of the failure of the executor to collect the same; that accounts receivable having a face value of $5,000 came into the hands of the executor and said accounts had an appraised value of $1,500; that no accurate account was made of the collection of these accounts; that the executor should be charged with the sum of $250, the amount paid by Mrs. Bletcher toward the funeral expenses of her father, Asle E. Burnham; and that the executor forfeited his right to compensation.

The cause came on for trial, and the trial court made the following finding as to the accounts filed in the probate court:

"It is alleged in the bill of complaint, and it has been frankly admitted upon this hearing, that neither of the final accounts which were filed by the administrator are correct. They neither reflect the true and correct amount of moneys received by the administrator, neither do the same reflect the correct amounts disbursed by him. The same are so inaccurate as in the opinion of this court, under all the facts and circumstances submitted, to compel this court to set aside the same, and it is the opinion of the court that the plaintiff is entitled to an accounting from the defendant, based upon the fact that the accounts are admittedly incorrect, and upon the further fact that the plaintiff did not know or discover their inaccuracy and fraudulent import until some time following the allowance of the same, and shortly prior to the commencement of this suit. * * *

"It is regrettable that the final account which was submitted by the defendant, and particularly the one which was filed in 1937, did not disclose to the probate court, and to any interested parties in the estate, the facts which have been brought before this court upon this hearing. There is no excuse or justification for the filing of false or inaccurate accounts knowingly in any court."

The above finding of the trial court is amply supported by the record in this case, but defendants urge that the orders of the probate court are *res judicata*.

In *MacKenzie* v. *Union Guardian Trust Co.*, 262 Mich. 563, 586, we said:

"The rule to be deduced from the authorities is that an annual or a final account of an executor or

administrator is conclusive as to all matters which
are before the court and are adjudicated in its allow-
ance, but the order of allowance is not final or con-
clusive and does not constitute an adjudication in
matters which were not before it upon the account-
ing and which were not considered by the court or
passed upon in allowing the account of the executor
of the estate.''

In the case of *McDannel* v. *Black,* 270 Mich. 305,
310, we said:

''The general principle of *res judicata* applies to
the orders of the probate court on final accounts of
executors and administrators.   We said in *Heap* v.
*Heap,* 258 Mich. 250:

'' 'The orders of the probate court are judgments,
*res judicata* of the matters involved, and cannot be
attacked collaterally.   *Chapin* v. *Chapin,* 229 Mich.
515.   The allowance of an account is an adjudication
of each item of it.   *Hall* v. *Grovier,* 25 Mich. 428.
The probate court determined, as it had to do to
render the judgments, that the administrators had
paid all debts, allowances, and residue reported by
them.   The finding of the payment of claims and
residue is binding on the interested parties and is
not open to question in a collateral proceeding.
*Clark* v. *Fredenburg,* 43 Mich. 263.   Except on ap-
peal, no other court may inquire into the sufficiency
of the testimony to determine whether it sustains
the findings and orders nor, indeed, whether they
were supported by any evidence.   *Morford* v.
*Dieffenbacker,* 54 Mich. 593; *Egan* v. *Grece,* 79 Mich.
629; *Holden* v. *Lathrop,* 65 Mich. 652.   The orders,
therefore, were judgments that the receipts were
valid.   The only procedure by which a court of
equity may inquire into the account is on bill to set
aside the orders for fraud.' ''

In the case of *In re Horn's Estate,* 285 Mich. 145, 152, we said:

"However, where there is fraud, or breach of trust, or concealment of assets, or failure to give proper notice of the hearing, an allowance of an annual account is not *res judicata. MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich. 563; *Baxter* v. *Union Industrial Trust & Savings Bank,* 273 Mich. 642; *Porter* v. *Long,* 124 Mich. 584."

In the case at bar, defendant Kelley filed "false, fictitious, fabricated and incorrect accounts" in the probate court. Such action is a fraud upon the court; and the orders of the probate court allowing the accounts are not *res judicata* of the accounts filed and do not bar the prosecution of this action.

We now direct our examination to the claims made by plaintiff. Of some importance is the claim for damages growing out of the sale of standing timber. The trial court made the following finding of facts in connection with this claim:

"The amount received for this timber was not disclosed or revealed in any of the accounts that were filed in the probate court. By going through the accounts which have been filed in this case and from the testimony which has been here produced, as near as this court can determine the same, it appears that from the sale of logs and bolts and wood there was received by the administrator and deposited in the bank a total of $1,651.34. The expense of cutting and disposing of this timber and wood incurred liability against the estate in the sum of $1,012.55, the net result of which is that the estate has realized through the sale of the timber a net amount of $638.79, as near as the court is able to determine the amount. * * *

"The acts of the defendant in selling this timber, even though without a license of the probate court,

was, in the opinion of this court, from the testimony here submitted, with the full knowledge and consent and approval of the plaintiff. It is the opinion of this court that if the plaintiff knew what was going on, and gave his tacit consent and acquiescence thereto, and remained silent from 1932 up until 1939 when he filed this bill of complaint, that he is now barred and estopped from raising any complaint on this issue.''

The record satisfies us that plaintiff had great confidence in Kelley and recognized his authority to administer the estate without interference on plaintiff's part. In coming to our decision upon this claim and other claims, we have in mind that Kelley destroyed a certain amount of the evidence that would be useful in this case; and that he made false statements under oath in filing his accounts in the probate court. Under such circumstances we are unable to give much weight to any of his testimony that is unsupported by the testimony of impartial witnesses.

Plaintiff's testimony is as follows:

''Among the properties left by my father was the woodlot. I knew that both under the will and under the agreement entered into between my sister and myself that the woodlot belonged to me. The first that it came to my attention that any timber was being sold off the woodlot was when parties who were in the store one time mentioned to me that certain wood was going by the store in trucks and that it was off that land. When I heard that I went to Mr. Kelley, the executor, and asked him about it. He said he was handling that and he did not give me any information about it. I did not make the acquaintance of a man named Smith who Kelley says had charge of the cutting of the timber. I never had any business dealings with him of any kind. Before today I did not know that he had been em-

ployed by Kelley for that purpose. I knew nothing about Kelley selling timber to a man named Bud Johnson, or how much he sold him, or on what basis, or anything about it. He never told me. I did not know of him selling any of the timber to a man named Monaghan. He never told me of selling any to Monaghan or how much he sold him, or on what basis. He at no time gave me any information in respect to the timber transactions. Up to a time subsequent to the commencement of this suit I was unable to obtain any information about it. I left it to my attorney to investigate the matter. * * *

"I never attempted in any way to interfere with Mr. Kelley's management of the estate as executor, and when he told me he had authority to sell the timber on the timber lot I did not question his authority."

As opposed to this testimony defendants produced a witness, Allen Peterson, who testified that before any wood or timber was cut, plaintiff, Peterson, and Kelley went in a car to the woodlot; that the parties picked up a man at the lumber mill; and that during a conversation between plaintiff and Kelley concerning the cutting and sale of the wood, plaintiff told defendant Kelley it was O.K. Our examination of the record convinces us that plaintiff knew the timber and wood were being marketed, but there was no accurate or reliable information in the files of this case in the probate court concerning the price received or the cost of selling the wood and timber.

An executor has no authority to sell real estate without a license from the probate court. Standing timber is real estate, *Kerschensteiner* v. *Northern Michigan Land Co.*, 244 Mich. 403, but when severed it becomes personal property, *Hicks* v. *Smith*, 77 Wis. 146 (46 N. W. 133). An executor is liable for the loss resulting from an unlawful sale of personalty. *Morton* v. *Johnston*, 124 Mich. 561.

It is urged that plaintiff is estopped from recovering any claimed loss. In *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62, we said:

"A fundamental requisite of estoppel is that conduct, whether action or inaction, on the part of the one against whom the estoppel is asserted has worked to the disadvantage of the party who urges this defense."

In the case at bar, there was no prejudice to defendants because of the delay upon the part of plaintiff in raising this issue. The weight of evidence is in favor of the claim made by plaintiff and the finding of the trial court upon this claim is reversed and remanded for the purpose of determining the loss to plaintiff by reason of the unlawful acts of defendant. The trial court may at his option take further proofs in order to determine the actual loss plaintiff has suffered.

It is next urged that plaintiff suffered a loss in the collection of the accounts receivable. The record shows that at the time of the death of Asle E. Burnham, there was approximately $5,000 in accounts receivable, and from time to time collections on these accounts were made by defendant Kelley as well as plaintiff and wife. The trial court made no specific finding upon this issue and it does appear to us that plaintiff has failed to show the particular accounts not collected by defendant. The case has been tried and this issue is settled.

It is also urged that defendant as executor is liable to the estate for neglect in the collection of rentals. As before noted, the records kept by defendant Kelley have been destroyed with the exception of the bank records. A public accountant was employed and he used such available records as remained to make up schedules of items from various sources. The schedules include only the de-

posits made and the checks written. We have examined.these schedules and are unable to say that the trial court was in error in holding that plaintiff was not damaged from the failure to collect or from the collection of rents. We have in mind that defendant reduced the rents of some tenants and failed to collect all of the rents from certain others. In this connection we recognize that during this period the financial condition of business in Michigan and elsewhere was not conducive to the easy collection of rentals. We deny this claim of plaintiff because of his failure to show misappropriation of rents collected or failure to collect rents that should have been collected.

It is also urged that the executor should be surcharged with one half of the funeral expense of Asle E. Burnham. The bank records show that the executor paid the sum of $500 in full settlement of this account. Mrs. Bletcher, plaintiff's sister, did not testify in the cause, and there is no direct and positive testimony that she paid the defendant Kelley any money on this account.

The remaining question concerns the fees charged by Kelley for his services as executor. He claims the sum of $276.59 for such services. Compensation for such services is based upon the theory that a service well performed should be paid for. In the case at bar, defendant Kelley was cashier of a bank. He served as personal representative for a number of estates and was familiar with probate accounts. Yet with this experience he has manipulated the affairs of the estate to such an extent that it is impossible to determine the loss to the estate. Under such conditions, we have no hesitation in saying that he has forfeited all right to compensation. In *Attorney General* v. *Lapeer Farmers Mutual Fire Ins. Ass'n,* 297 Mich. 188, we denied compensation to an

officer of an insurance company for gross neglect in the performance of his duties. The same rule applies in this case.

The decree of the trial court is reversed and the cause remanded for the purposes hereinbefore noted. Plaintiff may recover costs.

BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.