*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GUARDIANSHIP OF KAG.

---

CHRISTINE GILROY,

        Appellant,

v

KAG, a legally incapacitated person, and MARY MORRISON-COLLINS, Guardian of KAG,

        Appellees.

UNPUBLISHED
May 16, 2024

No. 367815
Grand Traverse Probate Court
LC No. 22-037016-GA

---

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

In this action pertaining to the guardianship of a legally incapacitated person, appellant, Christine Gilroy ("Christine"), appeals as of right[1] the trial court's order denying Christine's motion, in relevant part, to void the retainer agreement between KAG and her attorney, David Dobreff. Additionally, Christine challenges the trial court's previous order denying her motion for relief from an order modifying the guardianship, stating Christine agreed to never petition to be KAG's guardian again, and had to repay $14,169 of funds she misused while acting as KAG's guardian. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Christine is KAG's mother. KAG suffered a traumatic brain injury (TBI) from an automobile accident when she was only five years old. Christine took care of KAG while she was

---

[1] KAG challenges our jurisdiction to hear this appeal as of right. We have considered the argument and decided, under MCR 5.801(A)(3), that we have jurisdiction to consider this appeal as of right because it is from "a final order affecting the rights and interests of an adult or a minor in a guardianship proceeding under the Estates and Protected Individuals Code."

-1-

a minor, and was appointed as KAG's conservator for a period of time. In 2007, a Clinton County court removed Christine as conservator and ordered her to repay $70,000 of "unauthorized expenditures" from KAG's and another child's estates. When KAG reached the age of majority, Christine petitioned the Kalkaska County Probate Court ("the probate court") to appoint her as KAG's full guardian. After a brief investigation by a guardian ad litem (GAL), the probate court established the guardianship as requested by Christine.

In 2015, a limited conservatorship was established for KAG, with Barbara Winburne being appointed as the limited conservator. This was set up after Christine reached a settlement agreement in separate litigation with Citizen's Insurance, which apparently was the no-fault insurer covering the automobile accident that caused KAG's injuries. The settlement stated Christine, as guardian of KAG, agreed Citizen's Insurance would pay $5,700 per month for attendant care of KAG for the remainder of KAG's life. Citizen's Insurance would send the funds each month to Winburne, who would then review Christine's claim for attendant care, and then distribute the money to Christine.

On at least two occasions in the years following 2015, Christine attempted to sell a portion of the structured settlement agreement to obtain a lump-sum payment. She claimed to need the money for housing. In 2018, Christine was convicted of larceny of $1,000 to $20,000 after a jury trial in Kalkaska County. At the end of 2019, KAG participated in a neuropsychological evaluation with Robert J. Fabiano, Ph.D. Dr. Fabiano determined KAG had an intelligence quotient (IQ) of 67, could read and spell at a sixth-grade level, and could perform arithmetic at a fourth-grade level. Dr. Fabiano was most concerned about KAG's decision-making ability, but noted she did work as a barista at Starbuck's with the assistance of a job coach.

In November 2020, KAG met with Dobreff and agreed to retain him as her attorney to modify the guardianship. Days later, KAG, via Dobreff, filed an emergency motion to remove Christine as guardian and to appoint a professional guardian in her place. KAG's allegations against Christine ranged from emotional abuse to attempts to isolate KAG. The probate court appointed a GAL for KAG. The GAL issued a report recommending the probate court grant the requested emergency relief. Christine responded to the motion by generally denying the claims against her and arguing the probate court should be cautious about accepting the subjective opinions of KAG, who had the mentality of a sixth grader.

The probate court held a hearing regarding whether emergency relief was warranted. After being informed of Christine's criminal conviction and considering concerns about retaliation from Christine, the probate court removed Christine as guardian on a temporary and emergency basis. A professional guardian was appointed as temporary guardian until an evidentiary hearing could be held. Before the evidentiary hearing, though, Christine withdrew her objections to the petition to change guardians. On the day of the evidentiary hearing, KAG stated she still wished to have a hearing because after some brief discovery, she believed there was evidence of financial wrongdoing by Christine. The probate court agreed, but suggested KAG amend the petition to raise those claims. The probate court established Winburne as KAG's full conservator before the hearing ended. The professional guardian remained temporary until the financial claims could be litigated.

As promised, KAG soon amended her petition, alleging Christine committed conversion, fraud, and breach of fiduciary duties. Christine, acting *in propria persona*, removed the case to the United States District Court for the Western District of Michigan, which was quickly remanded for lack of jurisdiction. On June 18, 2021, the parties appeared for a hearing regarding KAG's petition. Christine, now represented by an attorney, informed the probate court that the parties had reached a settlement agreement. Pertinently, Christine agreed to the change in guardian and to repay KAG $14,169 to settle the remaining claims against her. The probate court accepted the settlement and instructed KAG to prepare and file a proposed order under the seven-day rule. KAG did so, and when there were no objections to the proposed order within the appropriate time, it was entered by the probate court on July 6, 2021. The written order stated Christine could never petition to be KAG's guardian again and the $14,169 had to be paid to KAG because of Christine's misuse of funds.

After the sudden death of the professional guardian, Mary Morrison-Collins was appointed as KAG's full guardian. Because of some issues with KAG's dog, Morrison-Collins was tasked with finding a new place for KAG to live. In October 2021, KAG moved to a neurorehabilitation center in Traverse City. In August 2022, the probate court entered an order changing venue to Grand Traverse County Probate Court ("the trial court"). On May 19, 2023, Christine moved the trial court for relief from the July 6, 2021 order, citing, as relevant to this appeal, MCR 2.612(C)(1)(c), (f), and (C)(3) as grounds for relief. Christine's primary claim was that the written order entered on July 6, 2021, did not match the oral settlement agreement placed on the record during the June 18, 2021 hearing. Christine also moved the trial court to deem void the retainer agreement between KAG and Dobreff, claiming KAG did not have the capacity to enter the contract. KAG responded by asserting the motion for relief from judgment was untimely under MCR 2.612(C)(2), and thus, should be denied. The trial court ultimately agreed and denied all of Christine's requested relief. This appeal followed.

## II. RELIEF FROM JUDGMENT

Christine contends the trial court abused its discretion when it denied her motion for relief from judgment on the basis of it being untimely. Alternatively, Christine asserts the trial court erred by deciding her motion before holding an evidentiary hearing regarding her claims of fraud. We disagree with respect to both arguments.

## A. STANDARDS OF REVIEW

"The probate court's decisions are generally reviewed for an abuse of discretion." *In re Estate of Huntington*, 339 Mich App 8, 17; 981 NW2d 72 (2021). Similarly, "this Court reviews for an abuse of discretion a trial court's ruling on a motion for relief from judgment." *Dep't of Environmental Quality v Waterous Co*, 279 Mich App 346, 364; 760 NW2d 856 (2008). Likewise, "[a] trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Huntington*, 339 Mich App at 17 (quotation marks and citation omitted). However, "[a] court necessarily abuses its discretion when it makes an error of law." *In re Guardianship of Gordon*, 337 Mich App 316, 318; 975 NW2d 114 (2021). "This Court reviews the probate court's findings of fact for clear error." *Huntington*, 339 Mich App at 17 (quotation

marks and citation omitted). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Conservatorship of Murray*, 336 Mich App 234, 239-240; 970 NW2d 372 (2021) (quotation marks and citation omitted). "We review de novo the trial court's interpretation and application of the court rules . . . ." *Int'l Outdoor, Inc v SS Mitx, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 359082 and 359811); slip op at 4.

## B. LAW AND ANALYSIS

The trial court did not abuse its discretion when it denied Christine's motion for relief from judgment without first holding an evidentiary hearing.

"MCR 2.612(C)(1) provides many reasons to offer relief from judgment." *Tindle v Legend Health, PLLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360861); slip op at 8. "Well-settled policy considerations favoring finality of judgments circumscribe relief under MCR 2.612(C)(1)." *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010). The relevant court rule states:

> **(C) Grounds for Relief From Judgment.**
>
> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
>> (a) Mistake, inadvertence, surprise, or excusable neglect.
>>
>> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).
>>
>> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
>>
>> (d) The judgment is void.
>>
>> (e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.
>>
>> (f) Any other reason justifying relief from the operation of the judgment. [MCR 2.612(C)(1).]

-4-

Despite citing a plethora of grounds for relief from judgment in the trial court, Christine solely cites MCR 2.612(C)(1)(c) and (f) in support of her claim for reversal on appeal.[2]

Under MCR 2.612(C)(1)(c), "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" are grounds to relieve a party from a judgment. In other words, "[a] trial court may relieve a party from a final judgment, order, or proceeding on grounds of fraud, misrepresentation, or other misconduct of the adverse party pursuant to MCR 2.612(C)(1)(c)." *Kiefer v Kiefer*, 212 Mich App 176, 179; 536 NW2d 873 (1995). "MCR 2.612(C)(1)(c) does not impose a due diligence requirement on the party seeking relief from judgment on the basis of fraud, misrepresentation, or the misconduct of an adverse party." *Int'l Outdoor*, ___ Mich App at ___; slip op at 4-5. This Court has held that, "a motion brought pursuant to MCR 2.612(C)(1)(c) is subject to the time constraints of MCR 2.612(C)(2)[.]" *Kiefer*, 212 Mich App at 181. "The motion [for relief from judgment] must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken." MCR 2.612(C)(2).

"Additionally, MCR 2.612(C)(1)(f) permits the trial court to grant relief from judgment for 'any reason justifying relief.' " *Int'l Outdoor*, ___ Mich App at ___; slip op at 5, quoting MCR 2.612(C)(1)(f).

> "In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice." [*Tindle*, ___ Mich App at ___; slip op at 9, quoting *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999).]

Stated differently, "relief is granted under MCR 2.116(C)(1)(f) when the reason for setting aside the judgment is not included in (C)(1)(a)-(e), and when the judgment was obtained by the improper conduct of the party in whose favor the judgment was entered." *Int'l Outdoor*, ___ Mich App at ___; slip op at 5.

> However, a trial court is justified in granting relief under MCR 2.116(C)(1)(f) "even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand." [*Id*. at ___; slip op at 5, quoting *Heugel*, 237 Mich App at 481.]

---

[2] Christine makes a sole reference to "fraud on the court" in her reply brief, but does not cite MCR 2.612(C)(3). Instead, she relies solely on *Burnham v Kelley*, 299 Mich 452, 460; 300 NW 127 (1941), in which our Supreme Court stated the defendant "filed 'false, fictitious, fabricated and incorrect accounts' in the probate court. Such action is a fraud upon the court; and the orders of the probate court allowing the accounts are not res judicata of the accounts filed and do not bar the prosecution of this action." We will address this argument below.

-5-

Although Christine's arguments regarding fraud were not considered on the merits by the trial court, a brief summary is warranted to establish the substance of her arguments. Christine's primary claim arises from the following discussion about a settlement that occurred during the June 18, 2021 hearing regarding KAG's second amended petition to modify the guardianship and to surcharge Christine for misuse of funds:

> *The Court*: I believe there's an agreement that's been reached. I've got Mr. Dobreff here on behalf of [KAG]. And then I have [Christine's attorney] here on behalf of [Christine]. And if you want to put the terms of your agreement on the record.

> [*Christine's Attorney*]: Your Honor, rather than continue with this litigation, [Christine] has agreed to pay to the estate $14,169 within the next five years. And the guardianship that is currently in place, the professional guardian, will remain.

> It's my understanding that encompasses the entirety of the agreement and that there is nothing else.

> *The Court*: All right. Mr. Dobreff?

> *Dobreff*: Yes, Your Honor, that is correct.

Before going off the record, the probate court verified the final orders would also include a permanent appointment of the temporary guardian then in place. Christine's counsel agreed such was correct. The probate court accepted the settlement, which it believed was the last factual dispute remaining in the case, and asked Dobreff to present orders reflecting the new plan for the guardianship and the parties' settlement.

Dobreff circulated a proposed order under the seven-day rule, MCR 2.602(B)(3), on June 24, 2021. The proposed order and notice of entry under the seven-day rule were filed with the probate court on June 28, 2021. The proof of service was filed on the same day, which verified Dobreff mailed the documents on June 24, 2021. By July 6, 2021, there were no objections on the record, so the probate court entered the proposed orders under MCR 2.602(B)(3)(a), which states: "If no written objections are filed within 7 days of the date of service of the notice, the judge shall sign the judgment or order if, in the court's determination, it comports with the court's decision." If the probate court had determined the proposed order did "not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter." *Id.* The order entered by the probate court removed Christine as permanent guardian, appointed McCoy in her place, and contained the following provisions:

> [] McCoy is full guardian. Christine [] is removed and cannot petition to be guardian again. Information of [KAG]'s whereabouts shall not be shared without [KAG]'s permission. Christine [] must return all of [KAG]'s personal property still in her possession to [McCoy]. The personal property must be returned within 10-days [sic] of this order.

IT IS ALSO ORDERED Christine [] must repay [KAG]'s estate the sum of $14,169.00 as repayment for misuse of funds, including the 2020 Unemployment Benefits totaling $8,680, the 2020-2021 Federal Stimulus Payments totaling $3,400, and (2) Social Security payments from November 24, 2020 through December 31, 2020 totaling $2,289.00.

IT IS FURTHER ORDERED CHRISTINE [] WILL REPAY THE SUM IN FULL WITHIN 5 YEARS OF BY JUNE 18, 2026.

When Christine finally challenged the order, she claimed she did not agree to never petition to be KAG's guardian again, allow KAG's location to be withheld from her, return personal property, that she misused KAG's funds, or the breakdown of the $14,169 she agreed to pay. Christine asserted the entire agreement was placed on the record on June 18, 2021, and did not contain the above terms.[3]

The trial court denied Christine's motion for relief from judgment because it was untimely. As established above, a motion brought under MCR 2.612(C)(1)(c) is subject to the one-year time limitation provided in MCR 2.612(C)(2). The order being challenged by Christine was entered on July 6, 2021, and Christine did not file her motion for relief from that order until May 19, 2023. There is no dispute that Christine's claims under MCR 2.612(C)(1)(c) were brought too late under MCR 2.612(C)(2) because Christine's motion was filed well after one year had passed since entry of the order. *Kiefer*, 212 Mich App at 181.

Christine attempts to escape this conclusion by arguing the one-year time limitation in MCR 2.612(C)(2) should have been tolled until she discovered the July 6, 2021 order was entered. Christine asserts she found out the order was entered contrary to her objections in January 2022, when she appeared for a personal protection order (PPO) hearing. Christine blames her attorney for failing to promptly inform her of the seven-day notice and assert her objections.[4] It is unclear

---

[3] Christine also claims fraud occurred because Morrison-Collins made a police report in May 2021, which Christine believed was meant to bolster KAG's position in the evidentiary hearing occurring on June 18, 2021. Notably, though, the police report referenced by Christine was never provided to the probate court during the impending hearing, nor was it provided to the trial court with respect to Christine's motion for relief from judgment. Considering the report was never given to the courts, it is difficult to discern why Christine believes such was fraudulent behavior affecting the court proceedings. Moreover, Christine was not permitted to raise this claim of alleged fraud for the first time on appeal, *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC,* ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 4-5, and she was not permitted to rely on evidence not provided to the trial court below, *Lamkin v Engram*, 295 Mich App 701, 703 n 2; 815 NW2d 793 (2012). Thus, for either reason, this allegation of fraud lacks merit.

[4] In her brief on appeal, Christine repeatedly blames her attorney for various issues in the proceedings. It is difficult to discern if Christine is contending the failures of her counsel should excuse her delay on its own, or whether she is just attempting to give context. Either way, Christine's reliance on errors by her attorney is misplaced. Under black-letter agency law,

how Christine believes such would be beneficial to her, considering she did not move for relief from judgment within one year of January 2022. Therefore, even if Christine was correct about when the one-year period under MCR 2.612(C)(2) begins, her motion still would have been untimely. Moreover, MCR 2.612(C)(2) is blatantly clear about when the clock begins to run, which is when "the judgment, order, or proceeding was entered or taken." In other words, the court rule does not permit the time period to begin on the basis of when alleged fraud is discovered. *Id*. Christine is seeking relief from an order entered by the probate court on July 6, 2021. As a result, Christine was required to bring her motion for relief from judgment under MCR 2.612(C)(1)(c) "within one year after" July 6, 2021. MCR 2.612(C)(2). There is no dispute she did not do so.

To get around this same error, Christine asserts the trial court should have overlooked her delay because of various hardships she claims she suffered. Specifically, Christine notes her mother became ill in January 2022, which required Christine to provide care until her mother's death in October 2022. Subsequently, in December 2022, Christine lost all of the work she had performed on the motion for relief from judgment in a house fire. Christine has effectively argued the trial court erred when it denied her request to toll the one-year time period in MCR 2.612(C)(2). She has not cited any legal basis for her claim that the time limit should have been tolled.[5] Nevertheless, it appears as though Christine is advocating for an equitable tolling of the one-year time limit.

"Equitable tolling, unlike judicial tolling, has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204; 747 NW2d 811 (2008). "The doctrine of equitable, or

---

Christine's counsel, as her agent, counted as her. *Fidelity & Casualty Co of NY v King*, 309 Mich 488, 493; 15 NW2d 718 (1944) ("[A] general rule of agency [is] that the principal is chargeable with, and is bound by, the knowledge of or notice to his agent received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends . . . .") (Quotation marks and citation omitted.) In other words, when Christine's counsel had notice of the seven-day-rule proposed order, Christine is deemed to have the same notice. *Id*. If Christine believes she was harmed by negligent representation, she must find relief in a claim of legal malpractice, not in a motion for relief from judgment.

[5] For this reason alone, we could refuse to consider this argument by Christine. "A party abandons an issue by failing to address the merits of his or her assertions." *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021). "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id*. (quotation marks and citation omitted). Christine has essentially asked us to determine on what legal basis the one-year limit should have been tolled; we could decline to do so. *Id*. In light of Christine appearing *in propria persona*, we have addressed the merits of the argument. See *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021) (holding that litigants appearing *in propria persona* are entitled to some leniency); but see *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973) ("Appearance in pro per does not excuse all application of court rules . . . .").

judicial tolling, has occasionally been recognized in Michigan as tolling relevant statutes of limitation when the courts themselves have created confusion." *Toman v McDaniels*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361655); slip op at 18 n 22 (quotation marks and citation omitted). "Michigan courts possess equitable power [to toll] and [] such power has traditionally been reserved for unusual circumstances[.]" *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 374; 1 NW3d 373 (2022) (quotation marks and citation omitted). This Court in *Wells Fargo* specifically referenced a "preexisting jumble" of laws and cases making it unclear where an action was supposed to be filed. *Id*.

Christine has failed to identify any case where a sick family member was deemed adequate to permit equitable tolling. With all due respect to a potentially troubling family situation, an ailing mother is not the type of "unusual circumstance" envisioned by the courts when addressing judicial or equitable tolling. *Id*. Once the nine-month period of illness cited by Christine is removed from the calculation, there is no possible manner for Christine to establish that her motion was timely under MCR 2.612(C)(2). Moreover, Christine's claims must fail even assuming she is correct that she was entitled to tolling. If tolling began when her mother became ill, ended when she died, restarted with the house fire, and ended one month afterward, Christine's motion still would have been too late. July 6, 2021, to May 19, 2023, is about 22 months and two weeks. Tolling for all of the time period identified by Christine as having suffered hardships would amount to 10 months. Therefore, even accounting for the tolling, Christine moved for relief from judgment 12 months and about two weeks after the order was entered on July 6, 2021. Consequently, this argument lacks merit even assuming all of the grounds alleged by Christine are true. MCR 2.612(C)(2).

In Christine's reply brief on appeal, she makes a brief mention of "fraud on the court," though she does not cite MCR 2.612(C)(3), which states:

> This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

Christine's allegation of fraud on the court, to the extent it was made, fails for two reasons. First, she is not permitted to raise an issue on appeal for the first time in her reply brief. See *Curry v Meijer, Inc*, 286 Mich App 586, 596 n 5; 780 NW2d 603 (2009) (declining to review certain claims because an appellant "improperly raise[d] both issues for the first time in their reply brief"). Second, a claim of fraud on the court under MCR 2.612(C)(3) would fail for the same reason as her claim under MCR 2.612(C)(1)(c)—timeliness. In *Kiefer*, 212 Mich App at 182, this Court ruled "that a fair reading of subrule C(3) leads to the construction that the subrule does not extend the time to file a motion where fraud on the court is alleged, but, rather, provides that the time constraints of the rule do not apply to independent actions." "In other words, the one-year time limit applies except when the plaintiff brings an independent action that claims either the plaintiff did not have actual notice or there was a fraud on the court." *Id*. As a result, regardless of whether Christine moved for relief from judgment on the basis of fraud under MCR 2.612(C)(1)(c) or (C)(3), the motion was untimely under MCR 2.612(C)(2).

As noted above, Christine also claims she was entitled to relief from judgment under MCR 2.612(C)(1)(f), which allows such relief for "[a]ny other reason justifying relief from the operation of the judgment." Relevantly, a motion for relief from judgment under subrule (f) is not subject to the one-year time limit stated in MCR 2.612(C)(2). Instead, a motion under subrule (f) must be brought "within a reasonable time[.]" MCR 2.612(C)(2). Recall from earlier that a motion filed under subrule (f) generally has three elements:

> "(1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice." [*Tindle*, ___ Mich App at ___; slip op at 9, quoting *Heugel*, 237 Mich App at 478-479.]

When arguing for relief from judgment under subrule (f), Christine does not make any additional allegations other than the fraud she asserts with respect to subrule (c). Because relief from judgment as a result of fraud is available under MCR 2.612(C)(1)(c), Christine is, generally speaking, not entitled to relief under MCR 2.612(C)(1)(f). *Tindle*, ___ Mich App at ___; slip op at 9. This rule only applies generally because this Court has also stated that "relief under MCR 2.116(C)(1)(f) [is warranted] 'even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand.' " *Int'l Outdoor*, ___ Mich App at ___; slip op at 5, quoting *Heugel*, 237 Mich App at 481. In *Heugel*, this Court determined relief was warranted under subrule (f) "because the judgment was obtained by [the opposing party]'s improper conduct." *Heugel*, 237 Mich App at 481.

Christine contends the same thing occurred in the present case because it was KAG's attorney, Dobreff, who obtained the judgment by committing misconduct. The trial court refused to credit this argument, citing Dobreff complied with the seven-day-notice rule, which provided Christine the opportunity to object to the proposed order. Frankly, this case is not comparable to *Heugel*, which involved a husband convincing his wife to agree to a judgment of divorce by "promising that they would remarry, thus inducing [the wife] to believe that the entry of the judgment was an insignificant formality." *Id.* at 477. This resulted in the wife effectively agreeing to have her share of the marital estate, $50,000, also count as spousal support. *Id.* This Court affirmed the order providing the wife with relief from that portion of the judgment, reasoning the "additional factor" required under subrule (f) existed because the husband "abused the unique nature of the husband-wife relationship to lead defendant to believe that the entry of the divorce judgment was an irrelevant formality." *Id.* at 481 (quotation marks omitted).

As can be seen from *Heugel*, subrule (f) applies when one party's malfeasance or fraud causes a result that is an injustice and uses their relationship to manipulate a delay in discovering the injustice. In the present case, Christine alleges the former but not the latter. In other words, Christine claims the July 6, 2021 order was entered as a result of fraud by KAG's attorney, but Christine does not argue there was some form of manipulation by KAG's attorney that caused Christine to be unable to discover the purported errors in the order. In fact, if Christine could be determined to blame anyone for her failure to object under the seven-day-notice rule, it would be her own attorney. However, relief under subrule (f) is only warranted, under circumstances like these, when "the judgment was obtained by [the opposing party]'s improper conduct." *Heugel*,

-10-

237 Mich App at 481. Consequently, because Christine had seven days to object and then one year to move for relief from judgment under subrule (c), and her failure to do so was not the result of deception by KAG or her attorney, the "additional factors" on which this Court relied in *Heugel* to grant relief from judgment simply are not present in this case.

Lastly, Christine argues the trial court abused its discretion when it denied her motion for relief from judgment without first holding an evidentiary hearing. She is correct that, generally speaking, "where a party alleges that a fraud has been committed on the court, it is 'an abuse of discretion for the court to decide the motion without first conducting an evidentiary hearing into the allegations.' " *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 405; 651 NW2d 756 (2002), quoting *Rapaport v Rapaport*, 185 Mich App 12, 16; 460 NW2d 588 (1990). "However, courts understandably look with skepticism upon a dissatisfied party's claim of fraud and insist on strict factual proof." *Yee*, 251 Mich App at 405, citing *Kiefer*, 212 Mich App at 179. "Thus, where the party requesting relief fails to provide specific allegations of fraud relating to a material fact, the trial court need not proceed to an evidentiary hearing." *Yee*, 251 Mich App at 405.

Christine misconstrues the trial court's reason for denying her motion for relief from judgment. With respect to her motion under MCR 2.612(C)(1)(c) and (C)(3), the trial court merely determined the motion was untimely under MCR 2.612(C)(2). In doing so, the trial court recognized Christine's motion was too late even if everything she alleged was true. Thus, with respect to the "material fact" of timeliness, Christine's motion did not depend on evidentiary findings, and as a result, an evidentiary hearing was not required. *Yee*, 251 Mich App at 405. As for the motion under MCR 2.612(C)(1)(f), the trial court did not consider and decide that no fraud had occurred. Instead, the trial court determined the "additional" or "extraordinary" factors required to get relief under subrule (f) were not present. Once again, the trial court acted without making any findings of fact against Christine. Instead, the trial court reasoned, assuming Christine was telling the truth, she still was not warranted to relief under subrule (f). Because no factual determination about the fraud itself was required under any of the subrules cited by Christine, the rule deeming the failure to hold an evidentiary hearing an abuse of discretion simply does not apply in this case. *Yee*, 251 Mich App at 405. In other words, because the merits of Christine's motion did not require factual development, the trial court did not abuse its discretion by denying the motion before holding an evidentiary hearing. *Id*.

Christine also makes an array of half-concocted arguments throughout her brief on appeal related to her claims of fraud. We have attempted to discover them and address them here. However, to the extent one was missed, or could be deemed to be missed, we consider those arguments waived because of Christine's failure to properly brief them. "A party abandons an issue by failing to address the merits of his or her assertions." *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021). "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id*. (quotation marks and citations omitted).

Christine cites MCR 2.507(G) to support her claim of fraud. The rule states, in relevant part, that "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court . . . ." *Id*. Christine

-11-

presumably relies on this court rule because it addresses agreements being placed on the record. However, it is not helpful to her position in this appeal because there was an agreement placed orally on the record. Therefore, despite Christine's assertions that the written order did not match the oral agreement, MCR 2.507(G) does not offer Christine any support. Christine also vaguely raises due process and claims her rights were harmed because the terms in the July 6, 2021 order were never litigated. "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). In making this due-process argument, Christine ignores that she was provided notice and an opportunity to be heard, she just failed to take advantage of it. Notably, KAG's attorney properly circulated the challenged order, allowed the appropriate time for objections, and the probate court then entered the order. Had she objected to the order, those objections undoubtedly would have been heard and addressed by the probate court. In short, Christine's due-process rights were protected, she merely failed to exercise them. *Id*. As established above, her claim of an error by counsel is her own issue, and is unrelated to whether she was provided due process of law. *Id*.

In sum, all of the arguments raised by Christine as a reason to reverse lack merit. The trial court did not abuse its discretion when it denied Christine's motion for relief from judgment. Lastly, the trial court did not abuse its discretion in declining to hold an evidentiary hearing before deciding the motion.[6]

## III. THE RETAINER AGREEMENT

Christine contends the trial court abused its discretion when it failed to deem void the retainer agreement between KAG and Dobreff. We believe the trial court did not abuse its discretion because Christine did not have standing to challenge the retainer agreement on May 19, 2023, which is when she filed her motion.

"[T]he term 'standing' generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Connell v Lima Twp*, 336 Mich App 263, 289; 970 NW2d 354 (2021) (quotation marks and citation omitted; alteration in original). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). "Thus, 'the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable.' " *Connell*, 336 Mich App at 290, quoting *Lansing Sch Ed Ass'n*, 487 Mich at 355. "Statutory standing, which necessitates an inquiry into whether a statute authorizes a plaintiff to sue at all, must be distinguished from whether a statute permits an

---

[6] KAG, on appeal, raises two other grounds for affirmance. We decline to consider these arguments because they are moot in light of Christine's arguments failing for the reasons stated above. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (holding that "[a] moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights," and that appellate courts, generally, "will not entertain moot issues or decide moot cases") (quotation marks and citations omitted).

-12-

individual claim for a particular type of relief." *Miller v Allstate Ins Co*, 481 Mich 601, 608; 751 NW2d 463 (2008).

When Christine challenged the retainer agreement, she had long been removed as guardian for KAG. Further, KAG was an adult and had a permanent guardian in place. Christine's finances were not connected to KAG's in any manner. Simply put, on May 19, 2023, Christine had no discernible interest in the contract between KAG and Dobreff. Consequently, Christine was not the "proper party to request adjudication of [that] particular issue . . . ." *Connell*, 336 Mich App at 290 (quotation marks and citation omitted). Because Christine lacked standing to challenge the retainer agreement, the trial court did not abuse its discretion in denying Christine's motion to deem it void. *Id*.

On the present record, there does not seem to be any concern about the retainer agreement with the individuals responsible for making decisions in KAG's life—Winburne and Morrison-Collins. Indeed, considering Winburne had been KAG's full conservator for more than two years when Christine moved the trial court to void the agreement, there can be little doubt Winburne was well aware of the fees being charged by Dobreff. Under MCL 700.5423(2)(z), Winburne had the power as conservator to "[e]mploy an attorney to perform necessary legal services . . . ." Briefly, then, if there was a concern about KAG's agreement with Dobreff, Winburne would have a fiduciary duty to address it. Christine, lacking any interest in the contract, simply does not have grounds to challenge it. *Connell*, 336 Mich App at 290.[7]

IV. CONCLUSION

Because Christine's appeal lacks merit on the basis of timeliness and standing, we affirm.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[7] At the end of her brief on appeal, KAG urges us to sanction Christine for vexatious litigation tactics. KAG abandoned this claim by failing to properly brief it. "A party abandons an issue by failing to address the merits of his or her assertions." *Airgas Specialty Prod*, 338 Mich App at 515. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id*. (quotation marks and citation omitted). Briefly, KAG did not cite any caselaw, statutes, or court rules supporting her claim for sanctions. Instead, KAG merely requests the sanctions and leaves it to this Court to discover the grounds for them. We decline to do so. *Id*. Moreover, assuming KAG is requesting sanctions under MCR 7.216(C)(1), which permits us to sanction litigants for filing vexatious appeals, she failed to file a separate motion for such as required by the rule. *Id*. ("The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8) . . . .").

-13-